**GUILFORD INDUSTRIES INC., Plaintiff,**

**v.**

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant.**

Civ. No. 87–0225–B.

United States District Court, D. Maine.

July 25, 1988.

---

John J. O'Leary, Jr., Catherine R. Connors, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Me., for plaintiff.

John S. Whitman, William W. McCandless Jr., Richardson & Troubh, Portland, Me., Martha J. Koster, Lee H. Glickenhaus, Gaston Snow & Ely Bartlett, Boston, Mass., for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GENE CARTER, District Judge.

On April 1, 1987, the Piscataquis River flooded, rupturing the piping for oil tanks at Plaintiff's textile mill. Oil flowed downstream, causing property damage. The Maine Department of Environmental Protection told Plaintiff that, under 38 M.R.S.A. §§ 548, 551, and 552, it would be held responsible for cleanup of the oil as well as for damage claims brought by downstream property owners. Defendant denied coverage for the damage.

Plaintiff in this action seeks a declaratory judgment that the damage to the downstream property caused by Plaintiff's oil is covered under its insurance policies with Defendant. It also seeks a declaration that Defendant is estopped to deny coverage under the policy because Defendant allegedly delayed in informing Plaintiff that it would not grant coverage. The parties have filed cross motions for summary judgment, Defendant seeking judgment on both counts and Plaintiff on Count I only.

### Pollution Exclusion

The insurance contract at issue comprises the comprehensive general liability policies which provide coverage as follows:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

Coverage A. bodily injury or

Coverage B. property damage

to which this policy applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage....

Following the general statement of coverage in the contract is a section entitled "Exclusions." This includes a pollution exclusion which provides:

This policy does not apply:

(1) to bodily injury or property damage arising out of the actual, alleged, or threatened discharge, dispersal, release, or escape of pollutants:

(a) at or from premises owned, rented, or occupied by the named insured; ...

(2) to any loss, cost or expense arising out of any governmental direction or request that the named insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

■ Defendant argues that it is entitled to summary judgment because the insurance policies are not ambiguous and fuel oil is a pollutant within the meaning of the pollution exclusion. The Court agrees.

Under Maine law, insurance contracts are to be interpreted against the insurer.

The language used in the policy should be viewed from the standpoint of the average ordinary person who is un-

trained in either the law or the insurance field "in light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured."

*Baybutt Construction Corp. v. Commercial Union Insurance*, 455 A.2d 914, 921 (Me.1983). As in *Baybutt*,

[t]he question in this case is whether an ordinary person in the shoes of the plaintiff ... would understand that the policy did not cover claims such as those pressed against it.... The objectively reasonable expectations of an insured will be honored even though painstaking study of the policy provisions would have negated those expectations.

*Id.*

Here, the exclusion is clear and unambiguous. Examination of the policy and the Complaint establish lack of coverage. *See Horace Mann Insurance Co. v. Maine Teachers Association*, 449 A.2d 358 (Me. 1982); *Travelers Indemnity Co. v. Dingwell*, 414 A.2d 220 (Me.1980) (dealing with pollution exclusion).

According to the Complaint, Plaintiff operates a textile mill along the banks of the Piscataquis River. Upon flooding of the river, pipes for two 10,000 gallon storage tanks ruptured causing fuel oil to flow downstream and to cause damage to downstream property owners. Maine has determined that the escape of oil and related products from storage poses a threat of damage from pollution to the environment. 38 M.R.S.A. § 541. The state has, therefore, prohibited the discharge of oil into rivers and other bodies of water, *id.*, § 543, and has mandated its cleanup. *See id.*, §§ 548, 551, and 552. Plaintiff has been charged with such cleanup by the Maine Department of Environmental Protection.

The pollution exclusion applies to pollutants, defined, in part, as any liquid irritant or contaminant. As a company subject to Maine laws, Plaintiff is charged with knowing that oil is a pollutant and that its discharge of oil into Maine waters is prohibited because it pollutes and contaminates them.

▪ Plaintiff, however, denies that that is the case. First, it argues that the Court should not find oil to be within the scope of the exclusion just because it is statutorily so defined by Maine, on the theory that the purpose of the statute and the purpose of the exclusion are at variance. The Court disagrees. The liability which the pollution exclusion seeks to disclaim often arises under statutes like Maine's environmental protection statutes. They are, therefore, an excellent source of information concerning what constitutes a pollutant.[1]

Plaintiff also argues that the terms "contaminant," "irritant," and "chemicals," viewed broadly and in isolation, are meaningless. Such a construction cannot be sanctioned, it suggests, because any substance would meet the exclusion, eliminating insurance coverage in all situations. The language of the exclusion, while broad, is plainly not meant to be viewed in isolation. Plaintiff is correct that almost any substance might fall within the exclusion, but it can only do so in certain very precisely drawn circumstances: if it is an irritant or contaminant. The provision is, therefore, far from all-inclusive or meaningless.

▪ Plaintiff also suggests that the Court should apply the doctrine of *ejusdem generis* to find that only by-products or waste products fall within the exclusion. Under the doctrine referred to by Plaintiff, if general words follow specific words in a list, the general words must be found to fall within the class or category established by the specific words. Thus, according to Plaintiff, since the introductory sentence of the exclusion refers to "smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants," the more general of those words should be understood to refer only to substances which have been used or are by-

---

1. The Court notes that the Supreme Court has also recognized that oil is a pollutant when introduced into waterways. *United States v. Standard Oil Co.*, 384 U.S. 224, 226, 86 S.Ct. 1427, 1428, 16 L.Ed.2d 492 (1966). Moreover, it is common knowledge that oil spills, leaks, or discharges are commonly considered polluting events. Plaintiff's argument that it could not reasonably have expected oil to be considered a pollutant is disingenuous.

products. Plaintiff overlooks, however, that the introductory sentence of the exclusion refers specifically to language that is to be *replaced* by the new exclusion. It cannot be used for construction purposes.

■ Moreover, the actual structure of the new exclusion does not list general items after specific ones. It defines pollutant quite clearly as *any* solid, liquid, gaseous or thermal irritant or contaminant and then gives examples. The doctrine of *ejusdem generis* does not apply when the context demonstrates a contrary intention, *Helvering v. Stockholms Enskilda Bank,* 293 U.S. 84, 88–89, 55 S.Ct. 50, 52, 79 L.Ed. 211 (1934), and the intention that damages caused by discharge of *any* irritant or contaminant be excluded is manifest. Moreover, even the listing of examples does not go from specific to vague, for the category Plaintiff seeks to have swallow the rest, waste, appears at the end of the list and the drafters did not choose to say "or other waste" indicating that all must be waste. Rather, the language specifically says "and waste."

Plaintiff also contends that case law supports its position that oil should not reasonably be construed to fit the pollution exclusion. Both cases cited by Plaintiff, however, have very different factual contexts and do not deal with an obvious polluting event like the discharge of oil into a river. *See Moulton, Allen & Williams, Inc. v. St. Paul Fire and Marine Insurance Co.,* 347 So.2d 95 (Ala.1977); *A–1 Sandblasting and Steamcleaning Co., Inc. v. Baiden,* 53 Or.App. 890, 632 P.2d 1377 (1981). They also both deal with the old version of the pollution exclusion which has been specifically replaced by the exclusion at issue here.

■ Plaintiff would have the Court read into the pollution exclusion a requirement that the discharge or release of the pollutant excluded for coverage be either intentional or negligent. The language of the exclusion, which has been broadened from its previous form, is clear on its face and suggests no such construction.

■ Finally, Plaintiff contends that the pollution exclusion applies in this case because the proximate or efficient cause of the damage to property owners was the flood, not conduct by Plaintiff, and that the flood is an occurrence covered by the policies. As Defendant suggests, it is liable under the policies to pay only those claims Plaintiff is legally obligated to pay. Plaintiff's legal obligation arises under Maine's pollution statutes, and the documents before the Court demonstrate that it is specifically not liable for flood damage to the downstream property owners.

The policy language also demonstrates that the exclusion was meant to apply in situations like this. Assuming, without deciding, that floods are covered occurrences, sums which Plaintiff was legally obligated to pay for property damage caused by the flood would be covered *except* if the property damage also arises out of the discharge of pollutants. The exclusion, therefore, carves out a specified area of noncoverage. Initially, the exclusion had included an exception for situations in which the discharge or escape was sudden and accidental. This, in part, paralleled the definition of occurrence which means "accident." That language, setting forth the exception to the exclusion, was deleted in the most recent endorsement, indicating that *all* discharges or escapes of pollutants are to be excluded. The intent of the parties is clear and should be given effect.

In a similar situation, the Court rejected the insured's argument that the sinking of a boat, liability for property damage from which was covered, had caused the discharge of oil, and therefore despite a pollution exclusion, the property damage resulting from the oil spill should be covered. HTC's argument is in error because Section 6 of the policy does not insure against the *peril* of sinking. Instead, Section 6 insures against *liability* for loss based on damage to certain property which may result from perils such as sinking. The principles relating to perils are therefore inapplicable here. There was no insured peril acting concurrently with or causing the excepted peril of oil pollution. Indeed, the argument that

those principles should be applied to a section of a policy which does not insure against specific perils proves too much. If such an argument were accepted—given the fact that oil can never escape from a barge without the intervention of some other factor—HTC could claim that Section 6 makes FIC liable whenever there is an oil spill. In such circumstances, HTC could always contend that the intervening factor is a "covered" peril which "caused" the excepted peril of oil pollution. This would be tantamount to reading the Pollution Exclusion Clause out of the policy altogether.

*Healy Tibbitts Construction Co. v. Foremost Insurance Co.*, 482 F.Supp. 830, 836–37 (N.D.Cal.1979) (footnote omitted).

### Estoppel

■ The Complaint also alleges that Defendant is estopped to deny coverage because of its delay in telling Plaintiff whether or not damage for the oil spill would be covered. Plaintiff orally informed Defendant of flood damage on April 3, 1987, and on April 23, provided the required written notice which adverted to potential private property damage claims that would probably be made against Plaintiff through the Maine Department of Environmental Protection. In that letter, Plaintiff informed Defendant that time was of the essence if Plaintiff were to control the claims and preserve its community relations. Counsel for Plaintiff reiterated Plaintiff's concern in a letter of May 6, and Defendant responded on May 7, saying that it was reviewing the matter and would advise of its coverage position within ten days. Plaintiff informed Defendant of the first property damage claim against it on May 20. By letter of May 26, counsel for Plaintiff complained that the coverage information had not been provided despite Defendant's letter and Plaintiff's renewed oral request for such information on May 21. On May 27, Defendant, on the basis of the pollution exclusion, denied coverage orally in a telephone conversation with Plaintiff's counsel. A letter confirming and explaining the denial was sent June 12, 1987.

Plaintiff asserts that Defendant's delay in deciding the coverage issue caused Plaintiff's reputation in the community to be damaged and caused it to lose the opportunity to settle its claims favorably, and that Defendant should be estopped to assert noncoverage because of the delay.

Under Maine law, the two elements of estoppel are "(1) unreasonable conduct of the insurer which misleads the insured concerning the scope of his coverage and (2) justifiable reliance by the insured upon that conduct of the insurer." *Roberts v. Maine Bonding & Casualty Co.*, 404 A.2d 238, 241 (Me.1979). Defendant's conduct must have induced the insured "to do what resulted to his detriment and what he would not have otherwise done." *Id.* This case is unlike *Roberts* in that there was never any representation to Plaintiff about coverage which might be construed as misleading. Defendant told Plaintiff it was reviewing the situation and then denied coverage, both orally and by letter.

Plaintiff urges the Court to find that Defendant's delay in denying coverage was unreasonable and thus was conduct sufficient to raise an estoppel. The Court cannot do so. At maximum, Defendant heard of the flood and escape of oil in early April 1987. Plaintiff was informed orally of noncoverage on May 27, 1987, less than two months later. In the case relied upon by Plaintiff for the proposition that delay in asserting noncoverage can raise an estoppel, the Court stated:

> [W]here, after timely notice, adequate opportunity to investigate a claim, and the knowledge of a basis for denying or questioning insurance coverage, the insurance carrier fails for an unreasonable time to inform the insured of a potential disclaimer, it is estopped from later denying coverage under the insurance policy. . . .

*Griggs v. Bertram*, 88 N.J. 347, 443 A.2d 163 (1982).

The Court is not persuaded that the Law Court would or should extend the doctrine of estoppel found in *Roberts* as the New Jersey court has in *Griggs*. Although silence may give rise to an estoppel, *see*

*Thompson v. Gaudette,* 148 Me. 288, 92 A.2d 342 (1952), "[t]here must be some element of turpitude or negligence connected with the silence or inaction by which the other party is misled to his injury." *Id.* at 297, 92 A.2d 342. Moreover, the doctrine of equitable estoppel must be sparingly applied. *Grant v. Warren Bros. Co.,* 405 A.2d 213, 217 (Me.1979).

Even if a *Griggs*-like theory of estoppel were to apply, the court there found an eighteen-month delay unreasonable. This Court cannot say that the delay of less than two months in this case demonstrates turpitude or negligence or that it is an unreasonable time for an insurer to investigate and inform the insured of a disclaimer. This is especially true since the doctrine of equitable estoppel is to be applied sparingly. The period between Plaintiff's April 23 required written notification to Defendant, which also informed it of the need for prompt resolution of the coverage issue, and the May 27 denial was slightly more than a month—again, a time period which is not unreasonable. The Court does not find that an estoppel was raised by Defendant's alleged delay in informing Plaintiff of its decision of noncoverage.[2]

Accordingly, it is *ORDERED* that Plaintiff's Motion for Summary Judgment on Count I be, and it is hereby, *DENIED.* It is *FURTHER ORDERED* that Defendant's Motion for Summary Judgment be, and it is hereby, *GRANTED,* Judgment to *ENTER.*

---

**2.** "The rule is well established that it is a question of law for the court, in any proceedings, even though the case may involve a trial by jury, whether the facts constitute an estoppel, if the facts are undisputed." *Thompson v. Gaudette,* 148 Me. at 297, 92 P.2d 342. Plaintiff argues that summary judgment should not be granted because it should be allowed to more fully develop facts regarding Defendant's unreasonable conduct. The Court is prepared to say, however, that the delay alleged in this case, less than two months from first notification, and approximately one month from the required contractual notification and warning that time was of the essence, does not, as a matter of law, raise an estoppel.