Leo WEBER, Daniel Weber, Doug Weber and Howard Weber, Appellants,

v.

IMT INSURANCE COMPANY, Appellee.

No. 88–1389.

Supreme Court of Iowa.

Oct. 17, 1990.

Thomas M. Walter of Johnson, Hester & Walter, Ottumwa, for appellants.

Marsha Ternus of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, and W. Kent Thomson and Alanson K. Elgar of the Elgar Law Office, Mt. Pleasant, for appellee.

Douglas E. Gross of Brown, Winick, Graves, Donnelly, Baskerville and Schoenebaum, Des Moines, and Lester O. Brown and Thomas G. Rozinski of Anderson, Kill, Olick & Oshinsky, P.C., New York City, for amicus curiae Iowa Public Service Co.

Roger S. Lande and David J. Meloy of Stanley, Rehling, Lande & Van Der Kamp, Davenport, and Peter C. Condron, Michael Y. Horton and Paul A. Zevnik of Kaye, Scholer, Fierman, Hays & Handler, Washington, D.C., for amici curiae Iowa Southern Utilities Co., the City of Clinton, Iowa, Quantum Chemical Corp., Getty Chemical Co. and ACC Chemical Co.

Mark E. Schantz of Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, and Thomas W. Brunner, Marilyn E. Kerst and Thomas B. Griffith of Wiley, Rein & Fielding, Washington, D.C., for amici curiae Employers Mut. Cas. Co., Hawkeye–Sec. Ins. Co., United Sec. Ins. Co. and Ins. Environmental Litigation Ass'n.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, SNELL and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

Ralph Newman brought an action against Leo, Daniel, Doug and Howard Weber (Webers) for nuisance and damages resulting from Webers' alleged contamination of his crops and land. Webers asked their farm insurer, IMT Insurance Company (IMT), to defend and indemnify them against the Newman lawsuit.

When IMT refused to defend or provide coverage, Webers filed this declaratory judgment action seeking a judicial determination that IMT had a duty to defend and indemnify them against Newman's claim. The district court ruled that IMT was not required to defend and indemnify Webers.

Upon Webers' appeal, our court of appeals affirmed. We granted Webers' application for further review. We, now, vacate the decision of the court of appeals and affirm in part and reverse in part the district court judgment.

I. *Background facts and proceedings.* Webers operate a farm in Wapello County, raising crops and hogs. The hogs' manure is used to fertilize the Webers' crops. Since approximately 1971, manure has been transported in manure spreaders to Webers' fields over a public road that passes Newman's home and farm. While the manure is being hauled by Newman's property, the manure spreaders drop manure on the road, and the tires of the manure spreaders track manure onto the road. Newman alleges that the odor from the manure left on the road contaminated his sweet corn crop and made the corn unmarketable.

In 1986, Newman filed suit for nuisance and damages against the Webers claiming contamination of his sweet corn crop and interference with the enjoyment of his property. The petition, as amended, alleged that, "the Defendants, while hauling hog manure from their hog feeding operation, have repeatedly allowed manure to fall on the country road ... and have failed to remove the same therefrom."

Webers looked to their insurer IMT to defend them against the Newman suit. IMT had issued two insurance policies that might provide coverage, a Farmer's Com-

prehensive Personal Liability Policy (liability policy), and a Personal Umbrella Policy (umbrella policy).

IMT conducted an investigation of the facts surrounding the Newman lawsuit, and decided under the facts then known that neither policy obligated them to provide coverage or a defense. IMT's position was: (1) there had not been an "occurrence" within the meaning of the liability policy language, (2) the liability policy did not provide coverage for discharge of "waste material" unless the discharge was "sudden and accidental," and (3) there had not been an "occurrence" within the meaning of the umbrella policy language.

Webers filed the present petition for declaratory judgment after learning that IMT refused to defend and indemnify them. The petition sought a determination that IMT was obligated to defend against the Newman lawsuit. After a bench trial in this law action, the district court ruled in favor of IMT, holding that IMT had no duty to provide a defense in the Newman case. Webers appealed. The court of appeals affirmed the judgment of the district court.

Upon further review, we must consider the following questions: (1) whether the pollution exclusion precludes coverage for Webers under the liability policy; (2) whether the doctrine of reasonable expectations requires coverage for Webers under the liability policy; (3) whether there was an "occurrence" within the meaning of the umbrella policy language; and (4) the identity of the insureds under the umbrella policy.

II. *The duty to defend and indemnify.* An insurer's duty to defend arises whenever there is a potential or possible liability to pay based on the facts at the outset of the case. *McAndrews v. Farm Bureau Mut. Ins. Co.,* 349 N.W.2d 117, 119 (Iowa 1984). "The insurer has no duty to defend if after construing both the policy in question, the pleadings of the injured party and any other admissible and relevant facts in the record, it appears the claim made is not covered by the indemnity insurance contract." *Id.* (citing *Central Bearings Co. v.*

*Wolverine Ins. Co.,* 179 N.W.2d 443, 445 (Iowa 1970)). Thus, in determining IMT's duty to defend the Newman suit our review will focus on the facts known at the outset of that case.

III. *The liability policy.* Webers' liability policy with IMT provided coverage for any "occurrence." The policy, however, did not define "occurrence." We will assume without deciding that there was an occurrence under the liability policy issued by IMT because we conclude that even if there was an occurrence, exclusion (q) (pollution exclusion) of the liability policy is determinative of coverage in this case. The pollution exclusion provides that the liability policy does not apply:

> to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, *waste materials* or other irritants, contaminants or pollutants ... but this exclusion does not apply *if such discharge,* release or escape *is sudden and accidental.*

(Emphasis added.)

Therefore, in determining whether the liability policy provides coverage, we must determine whether the Webers' hog manure was "waste material," and if it was waste material, whether the discharge of the hog manure was "sudden and accidental."

A. *Does hog manure fall within the pollution exclusion which excludes coverage for damage caused by waste material?* The district court decided that a reasonable interpretation of the term waste material, as it was used in the liability policy, included Webers' discharge of hog manure onto the road.

Webers challenge the district court's finding that the hog manure discharged on the road was waste material. Webers assert that the term waste material is ambiguous and, therefore, construing waste material in the light most favorable to the insured, the term waste material does not include hog manure that is being used as fertilizer. Ambiguity exists if after the application of pertinent rules of interpreta-

tion to the face of the instrument, a genuine uncertainty results as to which one of two or more meanings is the proper one. *Cairns v. Grinnell Mutual Reinsurance Co.*, 398 N.W.2d 821, 824 (Iowa 1987).

■ "Waste material" is not defined in the policy. Therefore, we are required to give the term its ordinary meaning. *Connie's Constr. Co. v. Fireman's Fund Ins. Co.*, 227 N.W.2d 207, 210 (Iowa 1975); *Andresen v. Employers Mut. Casualty Co.*, 461 N.W.2d 181, 184 (Iowa 1990). We believe that the ordinary meaning of waste material encompasses the hog manure that was spilled on the road in this case, and, we believe that waste material is not ambiguous as it applies in this case.

We have previously referred to hog manure as waste. *See Valasek v. Baer*, 401 N.W.2d 33 (Iowa 1987). After reviewing the evidence and circumstances in this case, we are not persuaded that this manure should be considered anything other than waste. There may be circumstances when hog manure should be classified as something other than waste material, but when it is spilled on the road it unambiguously constitutes waste.

We are, however, inclined to limit our holding to the facts of this case. Courts are currently struggling in an attempt to define the limitations imposed by pollution exclusions identical to the exclusion in this case. Amici in support of IMT has urged us to follow the rationale used in *Guilford Industries, Inc. v. Liberty Mut. Ins. Co.*, 688 F.Supp. 792 (D.Me.1988). The court, in *Guilford*, held that oil spilled from storage tanks constitutes a pollutant. *Id.* at 794. The court reasoned that once oil escapes into the environment, it no longer maintains its beneficial purpose; it becomes a pollutant. *Id.* Amici urges us to extend this logic to all instances where bodily injury or property damage results from the discharge, dispersal, release or escape of anything, since anything that escapes into the environment and causes bodily injury or property damage is a pollutant.

We strive to give effect to all of the language of a contract. *Berryhill v. Hatt*, 428 N.W.2d 647, 654 (Iowa 1988). "[A]n interpretation which gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable, unlawful or of no effect." *Id.* at 655 (citing *Fashion Fabrics v. Retail Investors*, 266 N.W.2d 22, 26 (Iowa 1978)).

We recognize that following the line of reasoning suggested by amici would essentially eliminate any meaning for the terms "smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants." These terms would lack any meaning because anything that escapes into the environment causing bodily injury or property damage would be classified as a pollutant under this approach. Therefore, if we were to adopt this interpretation we would, in essence, be left with a pollution exclusion that eliminates coverage for "bodily injury or property damage arising out of the discharge, dispersal, release or escape [of any substance]." To construe the policy language in this manner violates our principle that contracts should be interpreted to give all terms meaning. Therefore, we are not willing to adopt the approach suggested by amici.

On the other hand, we are also unwilling to hold that hog manure is not a waste material. As we stated above, the term waste material as used in the pollution exclusion is not ambiguous with regard to hog manure spilled on the road. The ordinary meaning of waste material includes hog manure spilled on a road.

We should not be understood to hold that manure always falls within the definition of waste material as set forth in the pollution exclusion. We hold only that under the facts of this case, hog manure spilled on the road is waste material.

■ B. *Does repeated manure spillage onto a public road fall within the policy language of sudden and accidental?* Because we believe that the hog manure spilled on the road was waste material, we must also determine whether the spilling falls within the policy language of sudden and accidental.

Jurisdictions have taken different approaches regarding the interpretation of the word sudden. *See, e.g., United States Fidelity & Guar. Co. v. Star Fire Coals, Inc.*, 856 F.2d 31 (6th Cir.1988); *Claussen v. Aetna Cas. & Sur. Co.*, 259 Ga. 333, 380 S.E.2d 686 (1989); *Just v. Land Reclamation Ltd.*, 155 Wis.2d 737, 456 N.W.2d 570 (1990). We need not, however, decide whether the spillage of manure on the road was sudden in this case because we conclude that the spillage was not accidental.

We have previously defined accident as "an event which, under the circumstances, is unusual and unexpected...." *Farm & City Ins. Co. v. Potter*, 330 N.W.2d 263, 266 (Iowa 1983). The Eighth Circuit Court of Appeals, applying Iowa law, has reached a similar definition for the term accidental. *In re Wade v. Continental Ins. Co.*, 514 F.2d 304, 306–07 (8th Cir.1975) (the determination of whether an injury is accidental must be made from the point of view of the insured and what he intended or should reasonably have expected). Our definition of accident is also closely akin to the definition of accidental used by other courts that have defined accidental in contexts similar to the situation we face. Those courts have defined accidental as an unintended and unexpected event. *See, e.g., Just*, 155 Wis.2d at 744–47, 456 N.W.2d at 573; *Lansco, Inc. v. Department of Environmental Protection*, 138 N.J.Super 275, 282–83, 350 A.2d 520, 524 (1975).

We adopt the following definition of accidental for the purposes of this liability policy: an unexpected and unintended event. This definition is consistent with our own definition of accident, as well as the definition for accidental adopted by most courts.

In applying our definition of accidental, we must give meaning to the words within the definition. We have not previously had the opportunity to define expected. However, the Eighth Circuit Court of Appeals has attempted to give meaning to "expected" when confronted with defining the word in an Iowa diversity case. That court stated that for the purpose of an exclusionary clause in an insurance policy, "expected denotes that the actor knew or should have known that there was a substantial probability that certain consequences will result from his actions." *City of Carter Lake v. Aetna Casualty & Surety Co.*, 604 F.2d 1052, 1058–59 (8th Cir.1979). In defining substantial probability, the court stated, "[t]he indications must be strong enough to alert a reasonably prudent man not only to the possibility of the results occurring but the indications also must be sufficient to forewarn him that the results are highly likely to occur." *Id.* at 1059 n. 4. We agree with the Eighth Circuit's definition and adopt it as our own.

In a law action tried to the court, the district court's findings of fact have the effect of a jury verdict and are binding on us if supported by substantial evidence. *Grinnell Mut. Reinsurance Co. v. Voeltz*, 431 N.W.2d 783, 785 (Iowa 1988); *Brichacek v. Hiskey*, 401 N.W.2d 44, 47 (Iowa 1987); *see also* Iowa R.App.P. 14(f)(1). A finding of fact is supported by substantial evidence if the finding may be reasonably inferred from the evidence. *Hubby v. State*, 331 N.W.2d 690, 694 (Iowa 1983). Evidence is not insubstantial merely because it would have supported a contrary result. *Voeltz*, 431 N.W.2d at 785.

The evidence supports the district court's conclusion that Webers knew or should have known that manure was going to spill on the road when it was transported in their manure spreaders. The evidence established a history, dating back several years, of both spilling and tracking manure onto the road as it was transported past Newman's land to the Webers' fields. Therefore, the district court's factual finding that the spills were expected by Webers is supported by substantial evidence. Because we conclude in our analysis that the manure spills on the road were expected by Webers, the spills were not accidental.

We need not consider whether the spills were intended because our finding that they were expected triggers the application of the pollution exclusion.

We agree with the district court that Webers had no coverage under the liability policy because the pollution exclusion pre-

cluded coverage for Webers based on the facts known at the outset of the Newman case. The discharge of waste material on the road by Webers was not accidental in view of the history of such discharges.

■ IV. *The doctrine of reasonable expectations.* Webers argue that if the pollution exclusion precludes coverage under the liability policy, the doctrine of reasonable expectations compels us to ignore the exclusion. The district court disagreed and ruled that the doctrine of reasonable expectations was not applicable to the facts of this case.

The doctrine of reasonable expectations states that objectively reasonable expectations will be honored even though painstaking study of the policy provisions would have negated those expectations. *C & J Fertilizer, Inc., v. Allied Mutual Ins. Co.,* 227 N.W.2d 169, 176 (Iowa 1975). The doctrine obligates the court to ignore a policy exclusion if the exclusion: (1) is bizarre or oppressive; (2) eviscerates terms explicitly agreed to; or (3) eliminates the dominant purpose of the transaction. *Lepic v. Iowa Mut. Ins. Co.,* 402 N.W.2d 758, 761 (Iowa 1987).

We agree with the district court that the pollution exclusion is not bizarre or oppressive, and does not eviscerate terms explicitly agreed to or eliminate the dominant purpose of the transaction. The dominant purpose of the liability policy was to insure Webers against a wide range of farm accidents which can cause serious personal injury or property damage. The pollution exclusion does not eliminate this purpose. It only denies coverage when specific materials are discharged by Webers, and, the discharge is not sudden or accidental. The insureds' reasonable expectations were not frustrated and, therefore, the doctrine of reasonable expectations is not applicable to this case.

■ V. *The umbrella policy.* The trial court ruled that the umbrella policy did not provide coverage for Webers. The umbrella policy issued by IMT states that IMT will indemnify and defend the insureds when there is property damage caused by an occurrence. Occurrence is defined in the umbrella policy as, "an accident, including *continuous or repeated exposure to conditions, which results in* personal injury or *property damage* neither expected nor intended from the standpoint of the insured...." (Emphasis added.)

Due to the facts of this case involving dispersal of hog manure on the road by Webers for several years, we initially focus on the umbrella policy's additional language extending coverage to "continuous or repeated exposure to conditions." Webers' actions fall within this portion of the definition of occurrence.

Our analysis, therefore, must center on whether the property damage (the injury to Newman's corn) was expected or intended from the standpoint of the insured Webers. *See, e.g., American Universal Ins. Co. v. Whitewood Custom Treaters, Inc.,* 707 F.Supp. 1140, 1148 (D.S.D.1989); *Mraz v. American Universal Ins. Co.,* 616 F.Supp. 1173, 1178 (D.Md.1985); *Kipin Indus. Inc. v. American Universal Ins. Co.,* 41 Ohio App.3d 228, ——, 535 N.E.2d 334, 337 (1987).

A. *Intended.* The evidence supports a conclusion that the Webers did not intentionally cause property damage. The spilling of manure onto the road while it was being hauled to the fields occurred when the liquid manure splashed out of the hauling tank, and when it fell off the tires of the manure spreaders. Although Webers were aware that they were spilling manure, there is no evidence that the Webers spilled the manure in an effort to intentionally contaminate Newman's sweet corn crop. All of the Webers testified that they never intentionally spilled manure and there was little if any evidence to rebut their testimony. If Webers never intentionally spilled manure, they certainly could not have intended the property damage that resulted.

B. *Expected.* We also must consider whether the damage to Newman's corn was expected from the standpoint of the insured. "[E]xpected denotes that the actor knew or should have known that there was a substantial probability that certain consequences will result from his actions." *City of Carter Lake v. Aetna Casualty &*

*Surety Co.*, 604 F.2d 1052, 1058–59 (8th Cir.1979). In defining substantial probability, "[t]he indications must be strong enough to alert a reasonably prudent man not only to the possibility of the results occurring but the indications also must be sufficient to forewarn him that the results are highly likely to occur." *Id.* at 1059 n. 4.

The evidence does not support the trial court's finding that Webers knew or should have known that Newman's sweet corn would be polluted by the manure spilled on the road. There is no testimony establishing that Newman complained to Webers that his sweet corn crop was being ruined by the smell of the manure. There is also no testimony that Webers knew that the spillage of manure was causing damage to the Newman's sweet corn crop. Webers did not know, and did not have any reason to know, that Newman was suffering property damage to his sweet corn crop as a result of the manure spilled on the road. Therefore, Webers did not expect property damage to occur.

Viewing the evidence as a whole from the standpoint of the insureds, we conclude Webers did not intend or expect property damage to occur to Newman and, therefore, an occurrence did take place within the meaning of the umbrella policy. IMT had a duty to defend and indemnify Webers under the umbrella policy. The trial court erred in ruling to the contrary.

VI. *Insureds under the umbrella policy.* IMT contends that if there is coverage under the umbrella policy, the coverage should not include Daniel or Doug Weber because they are not insureds under the policy. Appellants conceded during oral argument that Daniel and Doug are not insureds under the policy, and we now so hold.

VII. *Disposition.* All other issues raised have been considered, and we find them without merit or unnecessary to discuss.

We conclude that defendant IMT has no duty to defend and indemnify Webers under the liability policy. Under the umbrella policy coverage exists for Leo and Howard Weber, subject to other deductibles in the policy.

We, therefore, vacate the court of appeals decision and affirm in part and reverse in part the district court judgment. We remand for judgment consistent with this opinion.

Costs on appeal shall be taxed one-half to appellants and one-half to appellee.

DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED IN PART, REVERSED IN PART AND REMANDED.