**In re CHATEAUGAY CORPORATION, Reomar, Inc., The LTV Corporation, et al., Debtors.**

**The LTV CORPORATION, LTV Aerospace and Defense Company, LTV Vehicle Corporation f/k/a AM General Corporation, and Amland Corporation, Plaintiffs,**

v.

**AM GENERAL CORPORATION f/k/a Ren Acquisition Corporation, Defendant.**

Bankruptcy Nos. 86 B 11270 through 86 B 11334 and 86 B 11464.

Adv. P. No. 93–8160A.

United States Bankruptcy Court, S.D. New York.

May 6, 1993.

As Changed May 11, 1993.

See also 153 B.R. 409.

Kaye, Scholer, Fierman, Hays & Handler by Myron Kirschbaum, Deborah Lewis, Robert Grass, New York City, for debtors.

Baer Marks & Upham by Deborah Skakel, Justin D'Atri, Russell Kutell, Howard Graff, New York City, for AM General Corp.

BURTON R. LIFLAND, Chief Judge.

*I. Background*

On January 17, 1992, after considering active, spirited and competitive bids, this Court approved the sale, pursuant to section 363(b) of the Bankruptcy Code, 11 U.S.C. §§ 101–1330 (1993), of substantially all assets and liabilities of LTV Vehicle Corporation, formerly known as AM General Corporation, and Amland Corporation (LTV Vehicle Corporation and Amland Corporation are collectively referred to as "Old AMG") to Ren Acquisition Corporation ("RAC"). Old AMG and RAC had entered into an initial agreement on November 27,

1991 (the "November 1991 Agreement"), which was amended in certain respects not relevant to this decision during the January 17, 1992 hearing. On April 28, 1992, Old AMG and RAC entered into an amended agreement (the "Agreement") which incorporated the January 17, 1992 modifications into the November 1991 Agreement. The transaction closed on April 30, 1992.

After closing, a dispute arose regarding whether RAC, now known as AM General Corporation ("New AMG"), assumed liability for employee non-pension postemployment benefits ("other postemployment benefits," or "OPEBs") for all Old AMG employees. Prior to 1991, Old AMG manufactured military and non-military wheeled vehicles, including medium and heavy trucks, and postal dispatch vehicles such as the DJ–5. By November 1991, Old AMG no longer produced these vehicles and was primarily engaged in the production of High–Mobility Multi-purpose Wheeled Vehicles ("Hummers"). New AMG asserts that, pursuant to the Agreement, it purchased Old AMG's ongoing business operations and assumed those liabilities associated with such operations. Accordingly, New AMG claims that it did not assume OPEB liability with respect to those Old AMG employees who worked on product lines which had been discontinued prior to November 1991.

Old AMG asserts that New AMG assumed all of Old AMG's OPEB liabilities under the Agreement and that the Agreement does not bifurcate OPEB liability between Old AMG and New AMG. Old AMG contends that during the due diligence process its representatives repeatedly stressed that any purchaser of Old AMG's assets would have to assume all of Old AMG's pension and OPEB liability which did not arise out of Old AMG's affiliation with The LTV Corporation.[1] Old AMG also claims

that it would not have transferred substantially all of its assets and retained OPEB liability without the means to satisfy such obligations on an ongoing basis.

Old AMG has estimated the present value of OPEB liability for all Old AMG employees at approximately $130 million, and New AMG has estimated the present value of OPEB liability for those employees associated with operations which had been discontinued prior to November 1991 at approximately $50 million. New AMG has paid all OPEB associated costs for all Old AMG retirees without prejudice to its rights to seek reimbursement for such payments from Old AMG.

Old AMG seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, that New AMG has assumed OPEB liability for all Old AMG employees pursuant to the Agreement. Old AMG also seeks indemnification for its "damage, loss, liability and expense," including reasonable attorneys' fees, arising out of New AMG's alleged failure to assume OPEB and certain other liabilities under the Agreement.

New AMG has responded by filing three counterclaims which mirror Old AMG's claims. New AMG seeks a declaratory judgment that it only assumed liability for OPEBs associated with Old AMG employees who were, or had been, employed in operations or product lines which were ongoing as of November 1991.[2] New AMG also seeks an award of all monies it has expended satisfying those OPEB liabilities which it allegedly did not assume under the Agreement, and all costs and expenses associated with this matter.

Old AMG has moved for summary judgment on its causes of action, and seeks to dismiss New AMG's counterclaims for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), as

---

1. The chapter 11 reorganization of The LTV Corporation and its affiliate debtors has been marked by the need to account for pension and retiree benefit liability. *See, e.g., The Official Committee of Unsecured Creditors of LTV Aerospace Defense Co. v. The LTV Corp. (In re Chateaugay Corp.),* 973 F.2d 141, 144 (2d Cir.1992).

2. As this adversary proceeding involves a controversy that is "definite and concrete, touching the legal relations of parties having adverse legal interests[,]" *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937) (citations omitted), the parties' respective requests for declaratory relief are appropriate.

made applicable herein by Federal Rule of Bankruptcy Procedure 7012.

## II. Procedure

■ The standards for considering motions to dismiss and for summary judgment, respectively, are well settled. The Court must view New AMG's well plead factual counterclaim allegations in a light most favorable to New AMG for the purpose of Old AMG's Rule 12(b)(6) motion to dismiss. *Allen v. Westpoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991). The focus of the Court's inquiry is whether New AMG's pleading is sufficient to entitle it to offer evidence in support of its claims, for a counterclaim " 'should not be dismissed for failure to state a claim unless it appears beyond doubt that the [counterclaim] plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

■ Summary judgment, however, is appropriate when the Court determines that " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). When the Court is required to interpret and give meaning to a contract, "summary judgment may be granted when its words convey a definite and precise meaning absent any ambiguity." *Seiden Associates, Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir.1992) (citations omitted); *see also Commander Oil Corp. v. Advance Food Service Equipment*, 991 F.2d 49, 51 (2d Cir.1993) (It is the court's function to " 'discern the intent of the parties to the extent their intent is evidenced by their written agreement.' ") (quoting *International*

*Klafter Co. v. Continental Casualty Co.*, 869 F.2d 96, 99 (2d Cir.1989)); *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73 (2d Cir.1989) ("Where 'a question of intention is determinable by written agreements, the question is one of the law, appropriately decided ... on a motion for summary judgment.' ") (quoting *Mallard Constr. Corp. v. County Fed. Sav. & Loan Ass'n*, 32 N.Y.2d 285, 291, 344 N.Y.S.2d 925, 930, 298 N.E.2d 96, 100 (1973) (other citations omitted)).

■ The Second Circuit has defined ambiguous language as that which is " 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is congnizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.' " *Seiden*, 959 F.2d at 428 (quoting *Walk–In Medical Centers v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir.1987) (quoting *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*, 284 F.Supp. 987, 994 (S.D.N.Y.1968))). Contract terms are unambiguous, however, when they have " 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference in opinion.' " *Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990) (quoting *Breed v. Insurance Co. of North America*, 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 385 N.E.2d 1280 (1978)). Unambiguous contract language "is not made ambiguous simply because the parties urge different interpretations. Nor does ambiguity exist where one party's view 'strain[s] the contract language beyond its reasonable and ordinary meaning.' " *Seiden*, 959 F.2d at 428 (quoting *Bethlehem Steel Co. v. Turner Constr. Co.*, 2 N.Y.2d 456, 459, 161 N.Y.S.2d 90, 141 N.E.2d 590 (1957)); *see also Metropolitan Life*, 906 F.2d at 889 (citations omitted). Under applicable New York law,[3] the Court determines whether contract language is ambig-

3. The Agreement provides that it "shall be construed in accordance with and governed by the law of the State of New York." Agreement § 13.06.

uous as a matter of law. *Seiden,* 959 F.2d at 429.

■ If contract language is unambiguous, the Court may not receive extrinsic evidence to determine the intent of the contracting parties. *Id.* at 428 (citing *Metropolitan Life,* 906 F.2d at 889). Conversely, if contract terms are ambiguous, evidence of the parties' intent at the time of contracting must be received, *id.* at 426, and the moving party initially bears the burden of establishing the absence of any genuine issue of material fact. *Id.* at 429; *see also Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. While the nonmoving party may not "rely on speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment[,]" *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987), "the nonmovant's allegations are taken as true and it receives the benefit of the doubt when its assertions conflict with those of the movant." *Cruden v. Bank of New York,* 957 F.2d 961, 975 (2d Cir.1992) (citations omitted).

■ Furthermore, while *"reasonable* inferences can be drawn from the evidence in favor of the nonmoving party, ... 'the question of what weight should be assigned to competing permissible inferences remains within the province of a factfinder at trial[.]'" *H.L. Hayden Co. v. Siemens Medical Systems, Inc.,* 879 F.2d 1005, 1012 (2d Cir.1989) (emphasis in original) (quoting *Apex Oil v. DiMauro,* 822 F.2d 246, 253 (2d Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987)) (other citations omitted). For as the Second Circuit has noted, the Court's role "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight,* 804 F.2d at 11; *see also Schering Corp. v. Home Ins. Co.,* 712 F.2d 4, 9 (2d Cir.1983).

As New AMG's counterclaims mirror old AMG's claims for relief, the Court will first address Old AMG's motion for summary judgment.

## III. Discussion

### A. Assumption of OPEB Liability

■ While Old AMG and New AMG agree that the Agreement's terms are clear and unambiguous, the parties dispute the scope of New AMG's assumption of OPEB liability. New AMG claims that an analysis of Article IX of the Agreement, titled "Employee Benefits," and the use of expressly defined terms demonstrates that New AMG only assumed OPEB liability for those employees who were, or had been, associated with those operations which were ongoing as of November 1991. Old AMG asserts that New AMG's myopic approach does not reflect the parties' intentions, and that an analysis of the relevant provisions of Article IX, viewed within the context of the entire Agreement, unambiguously demonstrates that New AMG assumed OPEB liability for all Old AMG employees.

The Agreement expressly provides that New AMG did not assume, "except as otherwise provided in Article IX [of the Agreement], any liabilities or obligations relating to employee benefits or compensation arrangements[,]" such as OPEBs. Agreement § 2.03(vi). Within Article IX, section 9.08(a) establishes the scope of New AMG's assumption of OPEB liability, as follows:

[New AMG] shall, as of the Closing Date, assume *all obligations and liabilities* (including, without limitation, all obligations and liabilities attributable to the period prior to the Closing Date) of [Old AMG] and any Affiliate of [Old AMG] in respect of *Transferred Employees* and *Retired Employees* under each Employee Plan and Benefit Arrangement not covered under Section 9.06 or 9.07 [namely, OPEBs].

*Id.* § 9.08(a) (emphasis supplied). The Agreement thereby unambiguously provides that New AMG assumed all OPEB liability associated with Transferred Employees and Retired Employees. The dispute therefore centers on whether the terms Transferred Employees and Retired Employees refer to all Old AMG employ-

ees, or just those who were, or had been, employed in operations which were in existence as of November 1991.

Old AMG asserts that because the transaction called for the transfer of substantially all of Old AMG's assets and liabilities, the parties used the Agreement's schedules to state which assets and liabilities were being transferred. For example, Schedule 3.07(b), titled "Personal Property," lists specific items, such as used desks, used swivel chairs, tables and electric typewriters, which were transferred from Old AMG to New AMG. *See* Excerpt from Agreement Schedule 3.07(b) attached as Exhibit A to Reply Affirmation of Deborah Lewis in Support of Plaintiffs' Motion for Summary Judgment; *see also* Schedules 3.07(a) (Real Property), 3.11 (Contracts), 3.12 (Licenses and Permits), 3.14 (Intellectual Property), 9.05 (Collective Bargaining Agreements).

In similar fashion, the employee benefit plans which give rise to OPEB liability and which cover the Transferred Employees and Retired Employees are expressly listed, as required by section 9.02 of the Agreement, in Schedule 9.02. This schedule thereby indicates which Old AMG employees are referred to by the terms Transferred Employees and Retired Employees, respectively. It is undisputed that these plans do not distinguish between Old AMG employees who were and were not associated with business operations which were ongoing as of November 1991. This schedule plainly indicates that the parties did not bifurcate OPEB liability between Old AMG and New AMG and that the terms Transferred Employees and Retired Employees refer to all Old AMG employees covered by those plans listed in Schedule 9.02. Therefore Schedule 9.02, viewed in the context of Article IX and the entire Agreement, clearly and unambiguously demonstrates that New AMG assumed OPEB liability for all Old AMG employees.

This conclusion is supported by the Agreement's Initial Statement of Net Assets to be Sold (the "Initial Statement") and Supplemental Disclosure Schedule (the "Disclosure Schedule"). The Initial State-ment provides that "[p]ursuant to Section 9.08(a) of the Agreement, the liability for *all* postemployment benefits [such as OPEBs] is to be assumed by the Buyer. These benefits are further described in the Supplemental Disclosure Schedule attached to the Agreement." Initial Statement at 3 (emphasis supplied). The Disclosure Schedule provides that "the term 'Disclosure Schedule' shall refer to all the information set forth in (1) Schedules 3.07(a) ... *9.02* and 9.05 to the Asset Purchase Agreement (the Agreement)[.]" Disclosure Schedule at 1 (emphasis supplied). As previously noted, Schedule 9.02 lists those employment benefit agreements from which OPEB liability for *all* Old AMG employees arise. Therefore, the Agreement's Initial Statement and Disclosure Statement, when read together, also unambiguously state that New AMG assumed all OPEB liability for all Old AMG employees.

New AMG offers a countervailing interpretation of the Agreement which, while resting upon the definition of various terms, is neither supported by such definitions nor the structure of the entire Agreement. As previously noted, there is no dispute that New AMG assumed all OPEB liability with respect to Transferred Employees and Retired Employees, and New AMG begins its analysis with the definition of these terms.

The Agreement provides that " 'Retired Employees' means any Person, other than a Transferred Employee, who was actively employed in the *Business* at any time prior to the Closing Date and, if applicable, any beneficiary thereof." *Id.* § 9.01 (emphasis supplied). A Transferred Employee is defined as:

> [A]ny Person who, on the Closing Date, is actively employed in the *Business* or who is on disability leave, authorized leave of absence, military service or layoff with recall rights as of the Closing Date and, if applicable, any beneficiary thereof, but shall exclude any other inactive or former employee including any Person who has been on an unauthorized leave of absence or who has terminated his or her employment, retired or died on or before the Closing Date.

*Id.* § 9.01 (emphasis supplied). According to New AMG, these clauses establish that it only assumed OPEB liability with respect to those Old AMG employees who were engaged in the Business, which is defined as follows:

> WHEREAS, [Old AMG], among other things, (i) design, manufacture, sell and distribute High–Mobility Multi-purpose Wheeled Vehicles ("Hummers"), (ii) provide various engineering services, (iii) design, manufacture, sell and distribute spare parts for various vehicles (other than spare parts for the DJ–5 (as such term is defined in Section 2.02)) and (iv) undertake various stamping operations (together, the "Business")[.]

*Id.* at 1.

New AMG claims that this definition, particularly its use of the present tense, reflects an understanding that New AMG only purchased Old AMG's ongoing business operations. Therefore, New AMG asserts, Retired Employees and Transferred Employees, as defined by the Agreement, include only those Old AMG employees who were, or had been, associated with business operations which were ongoing as of November 1991. In accordance with this analysis, New AMG states that it did not assume OPEB liability for the other Old AMG employees, namely those who worked on product lines which had been discontinued prior to November 1991.

New AMG's analysis suffers from two distinct and debilitating flaws. First, an analysis of the entire Agreement reveals that the parties did not use the definition of the term Business to delineate which assets and liabilities were transferred to New AMG and accordingly, did not use such term to bifurcate OPEB liability between Old AMG and New AMG. Second, even assuming for the sake of argument, that the parties used the term Business to limit New AMG's assumption of OPEB liability as New AMG's suggests, the term Business, as defined, is not limited to business operations which were ongoing as of November 1991.

As a court's role is to "give effect to the intentions of the parties in entering into ... agreements[,]" *Metropolitan Life*, 906 F.2d at 889 (citations omitted), this Court must examine the full measure of their intention to be bound as expressed in the entire document, *See 200 East 87th Street Assocs. v. MTS, Inc.*, 793 F.Supp. 1237, 1247 (S.D.N.Y.) (citing *Metropolitan*, 906 F.2d at 889) (other citations omitted), *aff'd*, 978 F.2d 706 (2d Cir.1992), to determine how, and to what effect, the parties used the term Business throughout the Agreement. For example, section 2.03 of the Agreement titled "Assumption of Liabilities," provides that New AMG would "assume all debts, obligations, contracts, and liabilities of [Old AMG] arising out of the conduct of the *Business* of any kind, character or description, whether known or unknown ... except for the Excluded Liabilities (the 'Assumed Liabilities')." Agreement § 2.03 (emphasis supplied). Old AMG asserts that if the parties had used the definition of the term Business to express which assets and liabilities were transferred to New AMG, as suggested by New AMG, the Agreement would not recount that New AMG was not assuming liabilities which arose out of business operations which had been discontinued prior to November 1991.

Old AMG notes, however, that section 2.04(v) of the Agreement provides that New AMG was not assuming "any liability or obligation arising out of or resulting from the design, manufacture or sale by [Old AMG] of the DJ–5/or any spare parts sold by [Old AMG] or its affiliate." *Id.* § 2.04(v). It is undisputed that Old AMG had discontinued the manufacture of the DJ–5 prior to November 1991, and that production of DJ–5 parts is expressly carved out of the definition of the term Business. While New AMG responds that the parties expressly exempted DJ–5 associated liability in an excess of caution, the Court concludes that New AMG's argument, namely that the parties used the definition of the term Business to set forth the scope of assets transferred to, and liabilities assumed by, New AMG is not persuasive. Likewise, the Agreement does not establish the scope of New AMG's as-

sumption of OPEB liability through the definition of the term Business.[4]

Even assuming, for the sake of argument and notwithstanding the Agreement's detailed schedules and foregoing discussion, that the parties used the definition of the term Business to state which assets and liabilities were transferred to New AMG, New AMG's assertion that the Business, as defined, only includes business operations which were ongoing as of November 1991 is not supported by the Agreement's terms. As previously noted, the term Business is explicitly and unambiguously defined by reference to four business operations which were ongoing as of November 1991: (1) production of Hummers, (2) engineering services, (3) design and manufacture of certain spare parts and (4) certain stamping operations. Agreement at 1. This list, however, is exemplary and not exhaustive, as it is prefaced by the statement that Old AMG conducts these operations, "among other things[.]" *Id.*

■ New AMG claims that application of the *ejusdem generis* rule of construction to the phrase "among other things" demonstrates that the term Business only refers to business operations which were in existence as of November 1991.[5] The *ejusdem generis* doctrine, meaning of the same kind, class or nature, provides that where general terms precede specific terms, the general terms should be read to apply "only to persons or things in the same general kind or class as those specifically mentioned." Black's Law Dictionary 464 (5th ed. 1979); *see also U.S. v. Powell*, 423

U.S. 87, 91, 96 S.Ct. 316, 319, 46 L.Ed.2d 228 (1975) (quoting *Gooch v. U.S.*, 297 U.S. 124, 128, 56 S.Ct. 395, 397, 80 L.Ed. 522 (1936)); *Guilford Industries, Inc. v. Liberty Mut. Ins. Co.*, 688 F.Supp. 792, 794 (D.Me.1988), *aff'd*, 879 F.2d 853 (1st Cir. 1989); *Royal Ins. Co. (U.K.) Ltd. v. Ideal Mut. Ins. Co.*, 649 F.Supp. 130, 135 (E.D.Pa.), *aff'd*, 806 F.2d 254 (3d Cir.1986). Applying this doctrine to the definition of Business, New AMG claims that "among other things" should be read to apply to the class or kind of business operations explicitly enumerated in that definition.

■ The Court finds that application of the *ejusdem generis* doctrine does not clarify what "among other things" refers to. This conclusion is in accord with the well settled rule that this rule of construction should not be applied when the entire contract so demonstrates.[6] *See Guilford*, 688 F.Supp. at 795; *Royal*, 649 F.Supp. at 135; *see also* Black's at 464 (*ejusdem generis* is not applied when the contract "manifests a contrary intention"); *cf. Powell*, 423 U.S. at 91, 96 S.Ct. at 319 (*ejusdem generis* " 'cannot be used to defeat the obvious purpose of legislation.' ") (quoting *Gooch v. U.S.*, 297 U.S. at 128, 56 S.Ct. at 397). The Agreement's detailed schedules which state which assets and liabilities were transferred to New AMG illustrate that the parties did not intend to use the phrase "among other things" to be limited by the enumerated business operations, but, to the extent necessary, this phrase's inherent ambiguity allows for the various schedules to unambiguously state which assets and

---

**4.** Furthermore, a comparison of the definition of the term Business, which includes the vague phrase "among other things," with the detailed schedules reveals that New AMG's argument, that the parties relied upon this definition to indicate which party was responsible for tens of millions of dollars of OPEB liability, is simply not tenable.

**5.** New AMG also asserts that the use of punctuation along with the word "together" indicates that the Business only includes those expressly enumerated operations. This argument is entirely without merit.

**6.** Furthermore, application of this doctrine is unavailing when the expressly named items belong to several classes. *Cf. Royal*, 649 F.Supp.

at 135 (difficult to apply *ejusdem generis* if "specific terms in the enumeration would not be members of the same specific class or group[.]"). It is undisputed that the named business operations were in existence as of November 1991. Therefore, as New AMG suggests, "among other things" could be read as referring to business operations which were ongoing as of November 1991. On the other hand, the enumerated business functions involve the manufacture of vehicles and related engineering functions. Therefore, it is equally plausible, as Old AMG asserts, that "among other things" should be read to refer to vehicle manufacturing operations, and therefore includes the production of heavy and medium trucks.

liabilities were transferred. *Cf. Galli v. Metz,* 973 F.2d 145, 149 (2d Cir.1992) (Under New York law, "an interpretation that 'gives a reasonable and effective meaning to all terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect.'") (quoting *Rothenberg v. Lincoln Farm Camp, Inc.,* 755 F.2d 1017, 1019 (2d Cir.1985)) (other citations omitted).

As previously noted, schedule 9.02, as well as the Initial Statement and Disclosure Schedule, viewed in the context of Article IX and the entire Agreement, clearly and unambiguously illustrate that New AMG assumed OPEB liability for all Old AMG employees. Therefore, in view of the foregoing, Old AMG's motion for summary judgment is granted with respect to its first cause of action.

### B. Indemnification

■ Old AMG seeks indemnification for "'damage, loss, liability and expense,' including 'reasonable attorneys' fees,' 'relating to [New AMG's] assumption ...'" of liabilities under the Agreement. Complaint ¶ 41. Section 11.02 of the Agreement provides that New AMG would indemnify Old AMG for any loss incurred by Old AMG "arising out of *any breach* by [New AMG] or any affiliate of [New AMG]" of any of New AMG's obligations under the Agreement relating to its assumption of liability, such as for OPEBs. Agreement § 11.02 (emphasis supplied).

■ The Agreement does not define the word "breach" and the term therefore is accorded its ordinary and common meaning. *Laba v. Carey,* 29 N.Y.2d 302, 308, 327 N.Y.S.2d 613, 618, 277 N.E.2d 641, 644 (1971); *Nuclear Facilities, Inc. v. Advance Relocation and Storage, Inc.,* 571 N.Y.S.2d 36, 37, 173 A.D.2d 802, 803 (App. Div.2d 1991). Black's Law Dictionary defines a breach as "[t]he breaking or violating of a law, right, obligation, engagement, or duty, either by commission or omission. [A breach] [e]xists where one party to contract fails to carry out term, promise or condition of the contract." Black's at 170–71.

There is no dispute that New AMG has continued to pay all OPEB associated costs for all Old AMG employees. Furthermore, Old AMG's complaint does not even claim that New AMG has breached the Agreement, as it merely alleges that Old AMG suffered loss "[a]s a result of New AMG's *assertion* that it did not assume non-Hummer related OPEB liabilities[.]" Complaint ¶ 41 (emphasis supplied). The Agreement provides a mechanism for a party to contest the calculation of liabilities assumed under the Agreement, and Old AMG has not alleged that New AMG has abused this process such that it has breached the Agreement. *See* Agreement § 2.08(b). Therefore New AMG has not breached the Agreement with respect to assumption of OPEB liability.

■ Where there are no disputed issues of material fact and the nonmoving party is entitled to judgment as a matter of law, a court may *sua sponte* enter judgment against a party moving for summary judgment. *Celotex,* 477 U.S. at 326, 106 S.Ct. at 2554; *Coach Leatherware Co. v. Ann-Taylor, Inc.,* 933 F.2d 162, 167 (2d Cir.1991) (citations omitted). As previously noted, the Agreement provides that New AMG must indemnify Old AMG for loss arising out of any breach of assumption of liability under the Agreement, and New AMG has not breached the Agreement with respect to assumption of OPEB liability. In view of the foregoing, summary judgment is granted in favor of New AMG with respect to Old AMG's second cause of action.

### C. Motion to Dismiss New AMG's Counterclaims

As previously noted, New AMG lodged three counterclaims which mirror Old AMG's claims and New AMG's claims may not be dismissed unless it appears beyond doubt that New AMG could "prove no set of facts in support of [its] claim which would entitle [it] to relief." *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686 (citation omitted). The counterclaims' well plead allegations, as opposed to conclusory statements of law, simply recount that the parties entered into the Agreement and set forth

certain of the Agreement's clauses and provisions. As this Court's analysis of the Agreement, *see, supra,* Section II.A, reveals that the Agreement clearly and unambiguously provides that New AMG assumed OPEB liability for all Old AMG employees as a matter of law, New AMG has not stated claims upon which relief can be granted. Therefore, in view of the foregoing, Old AMG's motion to dismiss New AMG's counterclaims is granted.

*IV. Conclusion*

In view of the foregoing, the Court concludes as follows:

1. The Agreement unambiguously provides that New AMG assumed OPEB liability for all Old AMG employees.

2. In view of Conclusion paragraph 1, Old AMG is awarded summary judgment with respect to Old AMG's first cause of action.

3. In view of Conclusion paragraph 1, Old AMG's motion to dismiss New AMG's counterclaims is granted.

4. New AMG, at all relevant times, has satisfied all OPEB obligations for all Old AMG employees. To date, New AMG has not breached the Agreement by merely asserting that it did not assume OPEB liability for all Old AMG employees.

5. In view of Conclusion paragraph 4, New AMG is awarded summary judgment with respect to Old AMG's second cause of action.