**MAINE SURGICAL SUPPLY CO., Plaintiff,**

v.

**INTERMEDICS ORTHOPEDICS, INC., Defendant.**

No. 89–0165.

United States District Court,
D. Maine.

Jan. 7, 1991.

---

John B. Emory, Drummond & Drummond, Portland, Me., Louis Aurely III, Michael A. Kramer & Associates, Philadelphia, Pa., for plaintiff.

Gerald F. Petruccelli, Portland, Me., for defendant.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, Chief Judge.

This matter comes before the Court on Defendant's Motion for Summary Judgment. For the reasons discussed below, the Motion will be granted in part and denied in part.

## I. FACTS AND MOTION FOR SUMMARY JUDGMENT

The central issue in this litigation is the form and content of the business relationship between Plaintiff Maine Surgical Supply Co., a Maine corporation, and Defendant Intermedics Orthopedics, Inc., a Texas corporation.[1] Plaintiff alleges that it was the exclusive distributor of Defendant's

---

medical supply products in Maine, Vermont, and New Hampshire pursuant to an oral contract beginning in or about April 1985. On September 20, 1988, Defendant stopped doing business with Plaintiff without any warning or notice preceding the final termination letter. *See id.* at Exhibit D. Plaintiff filed a Complaint[2] in this Court on June 26, 1989 alleging that the termination breached several terms of the oral distributorship contract and an implied covenant of good faith. Plaintiff also alleges that the termination left $105,000 worth of inventory in its hands which Defendant is obligated under the oral contract to repurchase. Defendant's failure to repurchase the inventory, in Plaintiff's view, also constitutes a violation of the Texas Deceptive Trade Practices Act.[3]

Defendant contends that no distributorship agreement existed. No written contract was ever executed by these parties, other than a few specific purchase orders and invoices. Three draft distributorship contracts were produced during ongoing negotiations, but the parties were never able to agree to all of the elements of any of the drafts. *See* Amended Complaint, Exhibits A, B and C (Docket No. 3) (draft agreements). Plaintiff alleges that the oral distribution agreement's terms can be gleaned from the three unsigned drafts and other materials. Defendant disagrees.

Defendant now moves for summary judgment, employing a variety of arguments, but principally asserting that no enforceable oral contract existed between the parties. A motion for summary judgment must be granted if:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

---

1. Intermedics, Inc. was originally named as the defendant in this action. Intermedics Orthopedics, Inc., also a Texas corporation, was substituted for Intermedics, Inc. pursuant to a stipulation by the parties which has been endorsed by the Court. *See* Stipulation (Docket No. 2).

2. The original Complaint was supplanted by an Amended Complaint on October 3, 1989. For

the purposes of this decision, both of these documents will be referred to as the Complaint.

3. Defendant filed a counterclaim against Plaintiff to collect $4,588.28 for medical products Defendant alleges it shipped to Plaintiff. *See* Answer at 7 (Docket No. 4). This counterclaim is not at issue in the disposition of the pending Motion.

is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party's initial burden is to demonstrate to the Court that there is no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The Court of Appeals for the First Circuit has explained the summary judgment process as follows:

> [T]he movant must adumbrate 'an absence of evidence to support the nonmoving party's case.' *Celotex Corp. v. Catrett*, 477 U.S. 317 [106 S.Ct. 2548, 91 L.Ed.2d 265] (1986). When that is accomplished, the burden shifts to the opponent to establish the existence of a fact issue which is both 'material,' in that it might affect the outcome of the litigation, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986); *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904 [96 S.Ct. 1495, 47 L.Ed.2d 754] (1976), and 'genuine,' in that a reasonable jury could, on the basis of the proffered proof, return a verdict for the opponent. *Anderson*, 477 U.S. at 248 [106 S.Ct. at 2510]. It is settled that the nonmovant may not rest upon mere allegations, but must adduce specific, provable facts demonstrating that there is a triable issue. 'The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial.' *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989). As the Supreme Court has said:

> [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249–59, 106 S.Ct. at 2511.

*Brennan v. Hendrigan*, 888 F.2d 189, 191–92 (1st Cir.1989) (quoted in *MCI Telecommunications Corp. v. Franklin–Centennial Corp.*, 128 F.R.D. 158, 158–59 (D.Me. 1989)).

## II. CHOICE OF LAW

■ As a preliminary matter, the Court must resolve a dispute between the parties as to which state's law will govern this action. Plaintiff asserts that Texas law governs. Defendant contends that Maine law governs. Defendant is correct.

■ Since this is a diversity case, the Court must apply the choice-of-law rules of the state in which it sits. *McAllaster v. Bruton*, 655 F.Supp. 1371 (D.Me.1987) (citing *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). The Maine Law Court applies the local law of the state which "has the most significant relationship to the transaction and the parties" when a choice-of-law issue arises in a contracts dispute. *Baybutt Construction Corp. v. Commercial Union Insurance Co.*, 455 A.2d 914, 918 (Me.1983) (relying on Restatement (Second) of Conflict of Laws § 188 (1971)), *overruled on other grounds*, *Peerless Insurance Co. v. Brennon*, 564 A.2d 383 (Me.1989).

■ Five factors must be considered in assessing which forum has the greater relationship to an alleged contractual agreement: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. Restatement (Second) of Conflict of Laws § 188(2) (1971).[4] Because

---

4. Defendant mistakenly applies to the present case the analysis used by this Court in *Gates Formed Fibre Products, Inc. v. Plasti–Vac, Inc.*, 687 F.Supp. 688 (D.Me.1988). *Gates Formed Fibre* involved the construction of a multiple risk insurance policy. The factors governing the choice of law in the insurance context differ somewhat from the factors relevant to the choice of law governing an ordinary contract. *Compare* Restatement (Second) of Conflict of Laws § 193 (1971) *with* Restatement (Second) of Conflict of Laws § 188 (1971).

the places of contracting and negotiation, and the legal domiciles of Plaintiff and Defendant, offer no indication that these parties chose a particular forum in which to conduct their purported business relationship, the determinative factors in this case are the place of performance and the location of the subject matter of the alleged contract.

The subject matter of the alleged contract between Plaintiff and Defendant is an issue of some dispute between the parties. The alleged contract is either an agreement by Plaintiff to purchase Defendant's goods for distribution in Maine, Vermont and New Hampshire, or an agreement by Defendant for Plaintiff's services as an exclusive distributor in Maine, Vermont and New Hampshire.[5] In any event, Defendant shipped the goods to Maine, Plaintiff maintained an inventory in Maine, and the distribution of Defendant's goods by Plaintiff was accomplished from Plaintiff's place of business in Maine. Maine (along with Vermont and New Hampshire) and the goods stored and sold in Maine are the subject matters of this alleged agreement.

Identification of the place of performance of this alleged contract is facilitated by considering other potentially relevant sections of the Restatement (Second) of Conflict of Laws. Section 191, which applies to contracts for the sale of chattels, directs that the governing law should be "the local law of the state where under the terms of the contract the seller is to deliver the chattel...." Restatement (Second) of Conflict of Laws § 191 (1971). Under this alleged contract, the medical supplies were to be delivered by Defendant to Plaintiff's offices in Maine. Section 196 applies to contracts for the rendition of services. Service contracts are governed by "the local law of the state where the contract requires that the services, or a major portion of the services, be rendered...." Restatement (Second) of Conflict of Laws

§ 196 (1971). Plaintiff's services as a distributor of Defendant's products were to be rendered under the alleged contract, in relevant part, in Maine.

In sum, Maine has the most significant contacts with the alleged contract between Plaintiff and Defendant. Maine law, therefore, governs this action. Since Plaintiff cannot import another state's statutes to serve as the bases for causes of action in Maine, no valid claim under the Texas Deceptive Trade Practices Act may be brought in this cause of action. Accordingly, Defendant's Motion for Summary Judgment on Count IV of the Complaint will be granted.

## III. STATUTE OF FRAUDS AND ORAL DISTRIBUTION AGREEMENT

■ Plaintiff's breach of contract claims, contained in Counts I and II of the Complaint, are premised on the existence and enforceability of an oral distribution contract. Defendant argues that Maine's Statute of Frauds, contained in title 11 M.R.S.A. section 2–201, makes this purported oral agreement unenforceable. Section 2–201 requires that contracts for the sale of goods worth $500 or more must be memorialized in a writing signed by the party against whom enforcement is sought. 11 M.R.S.A. § 2–201(1). It is undisputed that no writing sufficient to satisfy section 2–201 was produced by the parties.[6]

The threshold question must be, however, whether section 2–201 can be appropriately applied to these circumstances. By its express terms, section 2–201 governs only contracts for the sale of goods. 11 M.R.S.A. § 2–201(1). Services are not goods. See 11 M.R.S.A. § 2–105(1) (defining "goods"). Thus, the applicability of section 2–201 rests on a determination of whether the alleged contract between Plaintiff and Defendant was a contract for the sale of goods or a contract for the

---

**5.** The record developed for this Motion does not permit the Court to state definitively what is the subject matter of the contract at issue. The lack of clarity on this point does not affect the choice-of-law analysis.

**6.** There is no disagreement between the parties that the draft agreements, which were never signed, do not satisfy the writing requirements of section 2–201. Plaintiff opposes Defendant's Statute of Frauds argument on other grounds.

provision of services. The initial burden in the context of this summary judgment motion is on the movant, Defendant, to establish that there is no genuine issue as to the fact that the alleged contract was a contract for the sale of goods.

Along with the Complaint, Plaintiff submitted to the Court three draft agreements which, according to Plaintiff, contain some or all of the terms of the oral contract between the parties. A reasonable person could read these documents and conclude that the alleged contract between these parties does not codify an agreement by Defendant to sell goods to Plaintiff, but evidences instead an agreement by Plaintiff to provide distribution services to Defendant. Thus, a genuine issue is raised by the record as to the subject matter of the agreement and, in turn, to the material issue of the applicability of section 2–201.[7] Defendant has not satisfied its initial burden of establishing that no genuine issue exists as to the subject matter of the contract; therefore, Defendant is not entitled to summary judgment on the question of whether section 2–201 bars the enforceability of the purported oral agreement.[8]

■ Defendant argues, in the alternative, that Plaintiff has put forward insufficient evidence to establish the existence of an oral contract. In the context of this Motion, the burden is on Defendant to demonstrate to the Court the absence of a genuine issue as to the material facts determining whether a contract was formed by these parties. For there to be a contract under Maine law, the parties must have manifested their mutual assent to all of the material terms of the agreement. *Paris Utility District v. A.C. Lawrence Leather Co.*, 665 F.Supp. 944, 952 (D.Me. 1987) (citing *Ouellette v. Bolduc*, 440 A.2d 1042, 1045 (Me.1982); *Sevigny v. Home Builders Association of Maine, Inc.*, 429 A.2d 197, 202 (Me.1981)). The terms of the contract must be reasonably certain, such that they provide a basis for determining the existence of a breach and for giving an appropriate remedy. *Paris Utility District*, 665 F.Supp. at 952. *See also Roy v. Danis*, 553 A.2d 663, 664 (Me.1989).

■ A mere declaration of intention to enter into a future agreement, even if the terms of that agreement are certain, is not an offer the acceptance of which can form a binding contract. *Zamore v. Whitten*, 395 A.2d 435, 440 (Me.1978). However, an oral agreement can be effective even in circumstances where a written contract is contemplated, but never executed. A writing may be nothing more than a *post hoc* memorialization of an already existing oral agreement. The intention of the parties to be bound, or the manifestation of such an intention, governs whether or not a contract was made. *Paris Utility District*, 665 F.Supp. at 954 (citing, *inter alia, Mississippi & Dominion Steamship Co. v. Swift*, 86 Me. 248, 258–59, 29 A. 1063 (1894)).

As before, Defendant's burden includes overcoming the material facts put in issue by the three draft agreements submitted by Plaintiff. Two of these drafts were proposed by Defendant during the course of contract negotiations, while the third draft was offered by Plaintiff in response to Defendant's proposed drafts. *See* Affidavit of Kevin Delaney at ¶ 5 (Docket No. 17) (hereinafter Delaney Affidavit). The three drafts demonstrate substantial agreement between the parties on a long list of subjects relating to their business relationship, as well as disagreement on some is-

---

**7.** In *Gestetner Corp. v. Case Equipment Co.*, 815 F.2d 806 (1st Cir.1987), the Court of Appeals for the First Circuit assumed the applicability of section 2–201 to a distributorship agreement, as did this Court in ruling on a directed verdict motion in the same case. *See id.* at 808–09. The assumption that the distributorship agreement at issue in *Gestetner Corp.* was a contract for the sale of goods was supported, however, by a full evidentiary record developed at trial. The present record does not unequivocally sup-

port a similar assumption about the alleged distributorship agreement at issue herein. Summary judgment, therefore, is not appropriate in this case.

**8.** The parties have not addressed the applicability of Maine's other Statute of Frauds provisions. The Court, therefore, will not address the potential applicability of those provisions.

sues.[9] *See* Complaint, Exhibits A, B, and C (Docket No. 1). The record also reflects a continuing business relationship between the parties from April 1985 to September 1988. Delaney Affidavit at ¶¶ 8–10. *See also* Defendant's Motion for Summary Judgment, Exhibit 2 at ¶¶ 11–12 (Docket No. 15) (Plaintiff's responses to Defendant's Interrogatories). The existence of that relationship is further supported by the language used by Defendant when it terminated the relationship:

> Maine Surgical Supply Co. ("Maine Surgical") has failed to meet its quota for the sale of the products of Intermedics Orthopedics, Inc., ("I.O.I.") for the first, second, and third quarters of Fiscal Year 1988. Accordingly, I.O.I. hereby terminates Maine Surgical as its distributor, effective immediately.

Complaint, Exhibit D (Docket No. 1) (Letter from Defendant's National Sales Manager to Plaintiff's President). A reasonable person could conclude that the parties had mutually assented to the material terms set forth in these proposed agreements with sufficient certainty, and had pursued their business relationship accordingly.

■ Defendant argues that the record demonstrates significant disagreements between the parties on two terms of the contract which Defendant claims are material: the term of the contract, and the inventory repurchase provisions. These provisions are material to this action, as they are determinative on the issues of whether the termination of the parties' relationship constituted a breach, and wheth-er Defendant is obligated to repurchase Plaintiff's inventory valued at $105,000. The Court cannot, however, state definitively on this record that these provisions were material to the formation of this alleged contract. Defendant's burden, once again, is to demonstrate the *absence* of a genuine issue as to these material facts. Defendant's own detailed discussion weighing competing facts in the record demonstrates that both the materiality and the content of these provisions are at issue and should be left to the trier of fact. The Maine Law Court has addressed this very point in another case where there was competing evidence as to the existence of an oral contract:

> The testimony was in conflict as to almost all of the material provisions of the agreement between the parties, including the terms and amount of payment and the nature and extent of the plaintiff's obligation. In such situation [sic] in which the existence of an oral contract is disputed or testimony as to its terms and nature is conflicting, it is for the trier of fact to ascertain and determine the nature and extent of the obligations and rights of the parties.

*Carter v. Beck*, 366 A.2d 520, 522 (Me. 1976).

Defendant has not satisfied its burden of establishing that there is no genuine issue as to the existence of an oral agreement between the parties. A reasonable person considering the above record could conclude, with substantial justification, that

---

**9.** The draft agreements appear to be identical or substantially similar on the following subjects: appointment of Plaintiff as Defendant's distributor; Defendant's right to sell directly to national and regional purchasing groups; subdistributors and indemnification of Defendant for subdistributors' acts; prices; terms of payment; delivery and risk of loss; inventory and consignment of inventory; all resales, including resales of Defendant's products in Plaintiff's assigned territory; calculation of sales objectives/quotas; compliance with the Federal Food, Drug and Cosmetic Act, and all regulations promulgated by the federal Food and Drug Administration; grant of warranty and exclusion of other liability; waiver of loss of profits and other consequential loss or damage; Defendant's intellectual property rights; marketing and promotional activities by Defendant; promotional activities by Plaintiff; product modifications; force majeure and other contingencies; relationship of the parties and the authority of Plaintiff; set-offs; waivers; assignment; notice requirements; merger clause; and severability.

The draft agreements appear to be substantially different with respect to the following subjects: imposition of monetary minimums on orders; the amount of inventory to be kept on hand by Plaintiff; compliance with sales objectives/quotas; indemnification of Plaintiff; the term of the contract; termination and notice of termination; the obligation of Defendant to repurchase inventory left with Plaintiff after the termination of the agreement; protection of confidential information; and the choice of law provision.

**604**

the draft agreements and the course of dealing between the parties demonstrate an intention to be bound to an oral distributorship contract. Since Defendant has not satisfied its burden, it is not entitled to summary judgment on the question of the existence of an oral contract.

 Finally, Defendant seeks summary judgment on Plaintiff's claim that the termination of the parties' business relationship constituted a breach of the covenant of good faith implied in all contracts by Maine law. *See* 11 M.R.S.A. §§ 1–203, 2–103(b). The uncertainty in this record as to the very existence of the contract raises a genuine issue of material fact as to the applicability of the requirement for good faith behavior. In addition, without a better understanding of the parties' respective duties under the alleged oral contract, the Court cannot determine whether, as a matter of law, Defendant's termination of its relationship with Plaintiff was expressly prohibited or expressly permitted by the contract, and therefore whether it evidenced good or bad intentions. Genuine issues remain. Summary judgment cannot be granted on the issue of Defendant's good faith.

Accordingly, it is hereby ORDERED that Defendant's Motion for Summary Judgment is GRANTED with respect to Count IV of the Amended Complaint claiming a violation of the Texas Deceptive Trade Practices Act. Defendant's Motion for Summary Judgment is DENIED in all other respects.

So ORDERED.