**George ANDERSON, et al., Plaintiffs**

v.

**VIRGINIA SURETY CO., INC., Defendant**

**No. 97–100–P–C.**

United States District Court, D. Maine.

Jan. 12, 1998.

Thomas S. Marjerison, Mark G. Lavoie, Norman, Hanson & Detroy, Portland, ME, for plaintiffs.

Sean P. Joyce, Marcus, Grygiel & Clegg, P.A., Portland, ME, for defendant.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

In this action, Plaintiffs George Anderson ("Anderson") and Concord General Mutual Insurance Company ("Concord") allege that Defendant Virginia Surety Company ("Virginia Surety") breached its duty to defend and indemnify Anderson under an insurance policy issued to him by Virginia Surety in a suit brought against him by a third party. Now before the Court are the parties' Cross–Motions for Summary Judgment. (Docket Nos. 14 and 17). For the reasons set forth below, the Court will deny Defendant's Motion for Summary Judgment and grant Plaintiffs' Motion for Summary Judgment.

## I. BACKGROUND

In 1994, Anderson provided instruction and parachute-jumping opportunities for first-time jumpers under the name "Thunderbird Sky Divers."[1] Plaintiffs' Statement of Material Facts ("PSMF") (Docket No. 18) ¶ 59; Defendant's Statement of Material Facts ("DSMF") (Docket No. 15) ¶ 8. Virginia Surety issued an insurance policy to Anderson for his Cessna 180 aircraft, with coverage from August 9, 1993, to August 9, 1994. PSMF ¶¶ 1, 2, and 4. Anderson is the named insured in the Virginia Surety policy. *Id.* ¶ 3. Concord issued a homeowners' insurance policy to Anderson and his wife with coverage from June 17, 1993, to June 17, 1994. *Id.* ¶¶ 49–50; DSMF ¶ 29.

On June 5, 1994, Seebren Patrick Reeves, Jr. attended an introductory parachuting course offered by the Thunderbird Sky Divers. DSMF ¶ 9. Reeves jumped out of the insured airplane and was killed when both his main and reserve parachutes failed to deploy properly. *Id.* ¶ 9; PSMF ¶¶ 20–26. Anderson served as jumpmaster during this incident. PSMF ¶ 23. On June 1, 1995, Brenda Reeves, the personal representative of the Estate of Seebren Patrick Reeves, Jr., filed a complaint against Anderson and two of the other Thunderbird Sky Divers in state court (the "Reeves suit"). *Id.* ¶ 27. Anderson was served with the complaint on September 29, 1995, and subsequently notified Concord of the suit. DSMF ¶ 30.

Concord notified Virginia Surety of the Reeves suit on April 26, 1996, in a letter requesting defense and indemnification on Anderson's behalf.[2] Affidavit of Sean P. Joyce ("Joyce Aff.") (Docket No. 16) Ex. 11(1). Apparently, Concord's letter to Virginia Surety was forwarded to American Eagle Group, Inc. ("American Eagle") for further action on the matter on behalf of Virginia Surety.[3] *See* Joyce Aff. Ex. 11(2). On May

---

1. Defendant refers to "the Thunderbird Skydivers School" in its Statement of Material Facts (Docket No. 15), while Plaintiffs indicate that no such separate business entity existed. Rather, Plaintiffs assert that Anderson and some of his friends conducted parachuting activities under the name of "Thunderbird Sky Divers." Plaintiffs' Statement of Material Fact ("PSMF") ¶ 59. The Court will use Plaintiffs' appellation.

2. The letter states in relevant part:
 Please be advised that the plaintiff's claim against your insured, Mr. Anderson, arises from the following circumstances:
 On or about June 5, 1994, the decedent attended the Thunderbird Skydivers School which was run by your insured George Anderson. On that date, the decedent was a passenger in a 1953 Cessna 180 4 seat aircraft, FAA no. N1607C. The decedent "jumped" from the aircraft under Mr.

Anderson's alleged supervision. The decedent's main parachute and reserve parachute failed to deploy, which resulted in the decedent's death upon impact with the ground. The decedent's death was videotaped and observed by his wife and family. ... Please accept this letter as notice of this lawsuit, and as a request for defense and indemnification pursuant to the Policy on behalf of Mr. Anderson.

3. From the correspondence submitted to the Court, it appears that a third entity, Aviation Adjustment Bureau, Inc. ("AAB"), was somehow involved in the handling of Anderson's claim. The same claims specialist, Jo Ann Storie, contacted Anderson and Concord's counsel throughout the dispute, using stationary from both American Eagle and AAB. *See* Joyce Aff. Ex. 11(4), (5), and (8). For the sake of clarity, the Court will refer to American Eagle in its recitation of the facts, because AAB's role is unclear.

21, 1996, American Eagle responded with a letter addressed to Concord's counsel indicating a plan to respond to Anderson's "request for a review of coverages" within a month. Joyce Aff. Ex. 11(4). On July 3, 1996, American Eagle sent Anderson what it termed a "Reservation of Rights Letter," which indicated American Eagle's plan to investigate the incidents surrounding Reeves's death.[4] Joyce Aff. Ex. 11(6).

On November 2, 1995, Concord filed a declaratory judgment action in this Court for the purpose of determining its duty to defend and indemnify Anderson with respect to the Reeves suit. *Concord v. Anderson et al.* Complaint, Joyce Aff. Ex. 10. On February 3, 1997, the Court determined that Concord had a duty to defend Anderson in the Reeves suit and deferred decision on the issue of indemnification until after the resolution of the Reeves suit. Order Affirming the Recommended Decision of the Magistrate Judge, Joyce Aff. Ex. 13.

Anderson then filed the present action in state court on February 19, 1997, and Virginia Surety subsequently removed the action to this Court pursuant to 28 U.S.C. § 1441(a).[5] On May 15, 1997, American Eagle sent Anderson a second Reservation of Rights Letter on behalf of Virginia Surety, indicating that the investigation would continue. PSMF Ex. 14. The letter does not specifically address Anderson's request for defense, although it does state that "[t]here are no allegations in the complaint filed against you which allege negligent operation of the aircraft which is insured under your Virginia Surety policy." *Id.* On June 26, 1997, Concord and Brenda Reeves reached a settlement in the Reeves suit.[6]

■ Plaintiffs' Second Amended Complaint contains claims for declaratory judgment (Count I), breach of contract (Count II), breach of the covenant of good faith and fair dealing (Count III), contribution (Count IV),[7] and violations of Maine's Late Payment statute, 24–A M.R.S.A. § 2436, and Unfair Claims Practices statute, 24–A M.R.S.A. § 2436–A(1)(B) (Count V).[8] The Court's discussion below addresses Counts I, II, and V. The Maine Law Court has refused to recognize a separate tort action for an insurer's breach of its duty of good faith and fair dealing in its interactions with its insured. *Marquis v. Farm Family Mut. Ins. Co.*, 628 A.2d 644, 652 (Me.1993). According to the Law Court, "the traditional remedies for breach of contract are available to the insured in the event an insurer breaches its contractual duty to act in good faith." *Id.* The Court will address the remedy of contribution in the context of its analysis of the breach of contract claim.

## II. DISCUSSION

### A. Standard

The Court of Appeals for the First Circuit has explained the workings and purposes of the summary judgment procedure:

Summary judgment has a special niche in civil litigation. Its "role is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794

---

4. Neither the May 21, 1996, letter nor the July 3, 1996, letter contained any reference to Anderson's request for a defense in the Reeves suit.

5. Concord joined the action in July 1997 as "the real party-in-interest ... by virtue of its payment of defense and indemnification costs." Amended Complaint (Docket No. 6) ¶ 7.

6. The Settlement Release and Indemnification Agreement indicates that Brenda Reeves agreed to accept and did receive $160,000 from Concord and Anderson in exchange for releasing Anderson from further liability regarding her claims in the Reeves suit. Joyce Aff. Ex. 9.

7. Plaintiffs' claim for contribution is labeled "Count I" in both the Amended and Second Amended Complaints, even though the claim for declaratory judgment is labeled "Count I" in the original complaint. Because counsel indicated at oral argument that his intention was to add a claim to the claims contained in the original complaint rather than supersede them, the Court will treat Plaintiffs' contribution claim as Count IV.

8. Although Plaintiffs have alleged violations of the Maine Late Payment and Unfair Claims Practices statutes under the heading of their contribution claim, *see* Second Amended Complaint ¶ 16, the Court will treat these allegations as a separate claim and refer to them as Count V.

(1st Cir.1992), *cert. denied,* 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). The device allows courts and litigants to avoid full-blown trials in unwinnable cases, thus conserving the parties' time and money, and permitting courts to husband scarce judicial resources.

A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). . . .

Once a properly documented motion has engaged the gears of Rule 56, the party to whom the motion is directed can shut down the machinery only by showing that a trialworthy issue exists. *See National Amusements [v. Town of Dedham],* 43 F.3d [731,] 735 [(1st Cir.1995)]. As to issues on which the summary judgment target bears the ultimate burden of proof, she cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Garside [v. Osco Drug. Inc.],* 895 F.2d [46,] 48 [(1st. Cir. 1990)]. Not every factual dispute is sufficient to thwart summary judgment; the contested fact must be "material" and the dispute over it must be "genuine." In this regard, "material" means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. *See [United States v.] One Parcel [of Real Property with Buildings],* 960 F.2d [200,] 204 [(1st Cir.1992)]. By like token, "genuine" means that "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party. . . ." *Id.*

When all is said and done, the trial court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor," *Griggs–Ryan [v. Smith],* 904 F.2d [112,] 115 [ (1st Cir.1990) ], but paying no heed to "conclu-

sory allegations, improbable inferences, [or] unsupported speculation," *Medina–Munoz [v. R.J. Reynolds Tobacco Co.],* 896 F.2d [5,] 8 [ (1st Cir.1990) ]. If no genuine issue of material fact emerges, then the motion for summary judgment may be granted.

. . . [T]he summary judgment standard requires the trial court to make an essentially legal determination rather than to engage in differential factfinding. . . .

*McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 314–15 (1st Cir.1995).

■ In analyzing the record in this case, the Court finds that no genuine issues of material fact exist, thus permitting the Court to rule as a matter of law on the parties' motions. In doing so, the Court will apply Maine law. A federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which it sits. *See Maine Surgical Supply Co. v. Intermedics Orthopedics, Inc.,* 756 F.Supp. 597, 600 (D.Me.1991) (citations omitted). Under Maine law, "the rights and duties of the parties with respect to an issue in contract are to be determined at the forum level by the local law of the state which, with respect to that particular issue, has the most significant relationship to the transaction and the parties." *Baybutt Constr. Corp. v. Commercial Union Ins.,* 455 A.2d 914, 918 (Me.1983), overruled on other grounds, *Peerless Ins. Co. v. Brennon,* 564 A.2d 383 (Me.1989). In this case, Maine law is applicable because the insured risk, Anderson's airplane, was located in Maine. *Baybutt,* 455 A.2d at 919 ("[I]t may be assumed that [the parties] entered into the insurance contract with the expectation and implied intent that the local law of the state where the risk is to be located would be applied to determine issues that may arise under the contract.").

## B. Duty to Defend

■ The threshold issue in this matter is whether Virginia Surety had a contractual duty to defend Anderson in the Reeves suit and, if so, whether Virginia Surety breached that duty.[9] If the insurer has no duty to

9. The Virginia Surety policy provides: "[w]e have the right and duty to defend any suit against

defend the insured against a claim brought by a third party, then there is no duty to indemnify the insured for the same claim. "The group of actions for which there is a duty to indemnify is merely a subset of the larger sphere of actions for which there is a duty to defend." *Northern Security Ins. Co. v. Dolley*, 669 A.2d 1320, 1322 (Me.1996) (citations omitted).

■■■ Under Maine law, the duty to defend is determined by the so-called comparison test, under which the court compares the allegations of the underlying complaint with the provisions of the insurance policy. *See Maine State Academy of Hair Design, Inc. v. Commercial Union Ins. Co.*, 699 A.2d 1153, 1156 (Me.1997); *NE Properties, Inc. v. Chicago Title Ins. Co.*, 660 A.2d 926, 927 (Me.1995); *Mullen v. Daniels*, 598 A.2d 451, 453 (Me.1991). The question of whether an insurer has a duty to defend an insured is a question of law. *See Commercial Union Ins. Co. v. Royal Ins. Co.*, 658 A.2d 1081, 1082 (Me.1995) (citing *Baywood Corp. v. Maine Bonding & Cas. Co.*, 628 A.2d 1029, 1030 (Me.1993)). Under the comparison test, the "insured is entitled to a defense 'if there exists any legal or factual basis, which could be developed at trial, which would obligate the insurers to pay under the policy.'" *Baywood*, 628 A.2d at 1030 (quoting *L. Ray Packing Co. v. Commercial Union Ins. Co.*, 469 A.2d 832, 833 (Me.1983)). "The correct test is whether a *potential* for liability within the coverage appears from whatever allegations are made." *Travelers Indemnity Co. v. Dingwell*, 414 A.2d 220, 226 (Me.1980).

The complaint in the Reeves suit includes the following relevant allegations:

7. On or about June 5, 1994, Seebren Patrick Reeves, Jr. attended the Thunderbird Skydivers school.

8. As a result of the negligence and wrongful acts of defendants, Seebren Patrick Reeves, Jr. was killed on or about June 5, 1994 while attending the Thunderbird Skydivers school.

9. As a result of the negligence and wrongful acts of defendants, plaintiff is entitled to recover for the benefit of the statutory beneficiaries all pecuniary losses and damages for the loss of comfort, society and companionship.

Joyce Aff. Ex. 4. Under the heading of "Liability to Others," Virginia Surety's policy provides:

We will pay damages you and anyone we protect are legally required to pay for bodily injury or property damage arising out of the ownership, maintenance or use of your aircraft if caused by an occurrence during the policy period.

Aircraft Insurance Policy, Joyce Aff. Ex. 3 at 6. "Bodily injury" is defined in the policy as "physical injury to a person, sickness or disease, as well as death or mental anguish that results." *Id.* at 1. Virginia Surety's policy defines an occurrence as "an accident, including continuous or repeated exposure to conditions, during the policy period, not expected or intended, which results in physical damage, bodily injury or property damage." *Id.*

Virginia Surety argues that the underlying complaint does not make allegations which obligated it to provide a defense for Anderson. Because the complaint does not affirmatively indicate any involvement of the insured airplane in Reeves's death, Virginia Surety contends that the complaint fails to allege facts which implicate the ownership, use or maintenance of the insured aircraft. In making this argument, however, Virginia Surety ignores well-established Maine law and policy regarding an insurer's duty to defend its insured against third party claims.

■■ Virginia Surety correctly characterizes the duty to defend as dependent in part upon the allegations of the underlying complaint. *See Horace Mann Ins. Co. v. Maine Teachers Ass'n*, 449 A.2d 358, 360 (Me.1982) ("The duty to defend is invoked by the filing of a complaint, the allegations of which potentially expose the insured to liability which can be construed as falling within the scope of insurance coverage.") (citations omitted). Virginia Surety's position, however, disre-

you or anyone we protect for bodily injury or property damage that is covered by this policy. This applies even if the suit is groundless, false or

fraudulent." Aircraft Insurance Policy, Joyce Aff. Ex. 3 at 7.

gards the realities of modern pleading. As the Maine Law Court has noted,

> plaintiffs ... are not subject to any requirement that every fact ultimately to be proved must be specifically alleged in their complaint. On the contrary, plaintiffs are only required to include in their complaint "a short and plain statement of the claim showing that the pleader is entitled to relief."

*Dingwell,* 414 A.2d at 225 (quoting M.R.Civ.P. 8(a)). "If the general allegations in the complaint could give rise to *any set of facts* that would establish coverage, then the insurer has a duty to defend." *Dolley,* 669 A.2d at 1322 (citations omitted) (emphasis added); *see also Massachusetts Bay Ins. Co. v. Ferraiolo Constr. Co.,* 584 A.2d 608, 609 (Me.1990) ("If the complaint shows even a possibility that the events giving rise to it are within the policy coverage, the insurer must defend the suit."). Furthermore, "[a]ny doubt about the adequacy of the pleadings to bring the occurrence within the coverage of the insurance policy should be resolved in favor of the insured." *J.A.J., Inc. v. Aetna Cas. & Sur. Co.,* 529 A.2d 806, 808 (Me.1987) (citing 7C Appleman, Insurance Law and Practice § 4683 (1979)); *see also Ferraiolo,* 584 A.2d at 609.

■■■■ "An insured is not at the mercy of the notice pleading of a third party suing him to establish his own insurer's duty to defend." *Gibson v. Farm Family Mut. Ins. Co.,* 673 A.2d 1350, 1352 (Me.1996) (citing *J.A.J., Inc.,* 529 A.2d at 808). In the instant case, the underlying complaint alleges negligence on the part of the operators of a skydiving school, resulting in Reeves's death. On the basis of these allegations, the Court is unwilling to conclude that there is no *possibility* that the insured airplane or its operation and use could have been involved in the incident giving rise to the underlying complaint. *See Ferraiolo,* 584 A.2d at 609.

Common sense leads the Court to the determination that an accident occurring during the victim's attendance at a skydiving school could have, indeed, involved an airplane. The Court concludes that, given the allegations in the underlying complaint, it was possible that the facts developed at trial in the Reeves suit would have indicated negligence in the ownership, maintenance, or use of the insured plane.[10]

In *Maine Bonding & Casualty Co. v. Douglas Dynamics, Inc.,* 594 A.2d 1079 (Me. 1991), the Maine Law Court compared a complaint in which the plaintiff alleged wrongful discharge and sought damages for emotional distress with an employer's insurance policy providing coverage for bodily injury to third parties. The Law Court found that the insurer had a duty to defend despite the complaint's failure to allege bodily injury, noting that "it is possible, albeit remotely so, that there would be coverage if the plaintiff can establish that he suffered 'bodily injury, sickness or disease' as a result of emotional distress caused by his discharge."[11] *Douglas Dynamics,* 594 A.2d at 1081.

In this instance, although the plaintiff in the Reeves suit failed to include a specific reference to the insured airplane in her complaint, the Court applies the comparison test "to determine whether there is any possibility for coverage under any set of facts that might be established by [the plaintiff in the underlying complaint]." *Id.* at 1080–81. The Court concludes that there was an apparent possibility that a factual basis obligating Virginia Surety to pay under the policy could have been developed at trial and, thus, that Virginia Surety had a duty to defend Anderson in the Reeves suit.

The record indicates that Virginia Surety never communicated directly to Anderson that it denied a duty to defend him in the

---

10. The Court is, in fact, now aware that the accident at issue did involve the insured airplane, because Mr. Reeves was skydiving from the airplane when he died. PSMF ¶ 24; DSMF ¶ 9. However, "[i]n determining the duty to defend, regardless of when that ruling is made, the court's consideration is limited to the underlying complaint and insurance policy." *Dolley,* 669 A.2d at 1322–23.

11. To reach the conclusion that the duty to defend had been triggered, the Law Court further decided that physical manifestations of emotional distress were not necessarily intended or expected such that an exclusion under the insurance policy would automatically apply. *Douglas Dynamics,* 594 A.2d at 1081.

Reeves suit prior to the commencement of this action. However, in its Answer to the original Complaint, Virginia Surety denied that it had a duty to defend Anderson in the then ongoing Reeves suit. Answer ¶ 13 (Docket No. 1(2)) (as restated in Answer to Amended Complaint and Second Amended Complaint). Accordingly, when Anderson and Concord entered into the settlement in the Reeves suit in June of 1997, Virginia Surety, for all intents and purposes, had refused to defend Anderson in the Reeves suit. Therefore, Virginia Surety breached its contractual duty to defend Anderson in the Reeves suit.

## C. Consequences of the Breach of the Duty to Defend

■ The parties disagree about the consequences of a breach of contract in the context of the duty to defend. Concord argues that Virginia Surety's wrongful failure to defend Anderson in the Reeves suit renders it liable for not only half of the defense costs and attorneys' fees borne by Concord in that matter but also for the total costs of settlement. Virginia Surety claims that it has no duty to indemnify Anderson in the settlement of the Reeves suit. Moreover, even if it did have a duty to defend, Virginia Surety argues that it is entitled to litigate the issue of whether it had a duty to indemnify Anderson. The Court is persuaded that Concord's interpretation of Maine law is correct: a wrongful failure to defend an insured results in the insurer's waiver of the right to litigate the indemnification issue. *See Cambridge Mutual Fire Ins. Co. v. Perry,* 692 A.2d 1388, 1391 (Me.1997).

In *Perry,* the insurer brought a declaratory judgment action seeking a ruling that it had no duty to defend or indemnify Joan Perry under a homeowners' insurance policy in a suit against her for alleged negligent failure to protect her child from alleged sexual abuse by the child's father. *Perry,* 692 A.2d at 1389–90. Although the insurer had originally agreed to defend Perry, it subsequently withdrew its defense on the basis that the policy's intentional injury exclusion barred coverage. *Id.* at 1390. Perry then assigned her rights in her insurance contract

to her child and consented to a stipulated judgment against her in the amount of $75,000. *Id.*

■ The Law Court concluded that the insurer had a duty to defend Perry because injury from negligent behavior is neither expected nor intended injury, thus making the intentional injury exclusion inapplicable to the allegations contained in the underlying complaint. *Id.* at 1391. The Law Court then stated

> If an insurer refuses to defend an action based on a claim actually within the coverage of the policy on the ground that it is outside the policy's coverage, such a refusal, even though based on an honest mistake by the insurer, constitutes an unjustified refusal and renders the insurer liable for a breach of the insurance contract.

*Id.* (citing *Gates Formed Fibre v. Imperial Cas. & Indem. Co.,* 702 F.Supp. 343, 346 (D.Me.1988)). Explaining the consequences of such a breach, both for the insured and for the insurer, the Law Court wrote

> Once an insurer breaches its duty to defend, the insured is free to proceed to protect her interests.... Thus, if an insurer wrongfully refuses to defend an action against the insured, as required by the policy, the insured is entitled to settle without jeopardizing her right to coverage otherwise available to her.

*Perry,* 692 A.2d at 1391 (citations omitted). A breach of the duty to defend thus enables the insured to enter into settlement agreements without forfeiting indemnification by the breaching insurer who took no part in the settlement negotiations. *See id.*

For the insurer, the consequences of breaching the duty to defend can be harsh. In *Perry,* the Law Court explicitly stated that it was possible that there was in fact no duty to indemnify on the insurer's part: "In a case such as this when it is alleged that [the insured] was aware of the abuse, it could be possible to show that her conduct amounts to more than negligence, and that the injury was expected within the meaning of the poli-

cy exclusion." [12] *Id.* at n. 3. Despite this possibility, the Law Court indicated that the insurer would be liable as long as the settlement was reasonable and made in good faith. *Id.* ("The insured's right to indemnification for a settlement entered into following an insurer's wrongful refusal to defend, however, is not without limitation."). Thus, according to Maine law, an insurer who breaches the duty to defend cannot avoid liability for a settlement by claiming that it had no duty to indemnify its insured in the underlying action. By wrongfully failing to defend the insured, the insurer waives the right to litigate the issue of indemnification after the insured has settled the underlying action.

Virginia Surety attempts to distinguish *Perry* on several grounds. First, it argues that "[i]t is understandable that the *Perry* Court would look upon [the insurer's] withdrawal of defense with piercing scrutiny, for without [the insurer] Perry was without counsel. In this case Anderson was represented by counsel." Memorandum of Law in Support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgment ("Defendant's Opposition") (Docket No. 21) at 11. The *Perry* Court, however, does not make its holding contingent on the status of Perry's representation. Rather, the Law Court's discussion focuses upon the insurer's wrongful breach of the duty to defend and its consequences. *Perry*, 692 A.2d at 1391. Second, Virginia Surety argues that *Perry* is distinguishable because "Perry had a judgment rendered against her. Anderson did not, for he settled with the Reeves estate." Defendant's Opposition at 11. This argument completely ignores the language in *Perry* discussing the insured's right to *settle* without otherwise jeopardizing her right to coverage and the insurer's liability for rea-

sonable, good-faith *settlements*. *See Perry*, 692 A.2d at 1391.

Finally, Virginia Surety correctly notes that the instant case does differ from *Perry* in that *Perry* involved a dispute between an insurer and its insured, whereas this case in essence involves a dispute between two insurance companies.[13] Concord has paid the full settlement amount on Anderson's behalf and now seeks contribution from Virginia Surety. Second Amended Complaint ¶¶ 6, 15; PSMF ¶ 46; DSMF ¶ 35. Public policy concerns, however, justify applying the rule of *Perry* to this situation.

The application of a different rule when two insurance companies are involved contradicts Maine's strong policy of encouraging insurers to defend their insureds, even if other insurers are already involved, whenever the comparison test is satisfied. *See, e.g., Royal Ins. Co.*, 658 A.2d at 1082–83; *Bond Builders, Inc. v. Commercial Union Ins. Co.*, 670 A.2d 1388, 1390–91 (Me.1996). Allowing insurers to litigate the issue of indemnity after wrongfully refusing to defend will thwart the broad duty to defend required under Maine law. Such a rule would encourage only the first insurer requested to provide a defense to do so; other insurers, especially those confident that no duty to indemnify exists, will refuse to defend and will wait to litigate the indemnification issue. These insurers, under such a rule, will have no stake in the outcome of the underlying action and thus may assume the risk of being held liable for a portion of the defense costs after the underlying action is resolved.

The Law Court, however, has reiterated that the duty to defend is broader than the duty to indemnify and that insurers may be obligated to defend insureds in situations in which the duty to indemnify ultimately will

---

**12.** An insurer's duty to indemnify an insured against the claims of a third party is not determined until the insured's liability has been decided. *Id.* at n. 3 (citing *Hanover Ins. Co. v. Crocker,* 688 A.2d 928, 929 n. 1 (Me.1997)).

**13.** In Plaintiffs' Motion to Amend Pleadings (Docket No. 5), Anderson moved to amend the Complaint to include Concord as a plaintiff, asserting a claim of contribution. The Motion further states:

6. As a result of Concord General Mutual's provision of a defense and settlement of the underlying case, Plaintiff George Anderson no longer has a significant interest in this litigation.

7. As a result of Concord General Mutual's provision of a defense and settlement of the underlying case, Concord Mutual General is the real party-in-interest as the Plaintiff in the instant case.

not exist. *See Douglas Dynamics,* 594 A.2d at 1080 ("[B]ecause the duty to defend is broader than the duty to indemnify, application of the comparison test may sometimes require an insurer to defend when there may be no ultimate duty to defend."). The position advocated by Virginia Surety makes it possible, and even advantageous, for insurers to take their chances with a refusal rather than providing a defense or bringing a declaratory judgment action to determine whether a duty to defend exists. Furthermore, if an insurer, having wrongfully refused to provide a defense, is not liable for the costs of settlement simply because the insured is represented by a second insurer, then the second insurer has a strong disincentive to avoid settling the underlying dispute despite the possible prudence of such an action. These public policy concerns warrant the application of the *Perry* rule even in situations in which another insurance company has provided a defense. Thus, the Court finds that Virginia Surety, by its wrongful refusal to defend Anderson in the Reeves suit, has waived its right to litigate the issue of indemnification with regard to the settlement.

 Concord asserts that Virginia Surety is liable for the entire settlement because Concord has no duty to indemnify Anderson in this matter under the terms of its homeowners' insurance policy. Concord defended Anderson under a reservation of rights and contested its duty to indemnify in the Reeves suit. PSMF ¶ 56. Reeves's death was a result of a skydiving accident in which he jumped from the insured airplane and died upon impact with the ground after his parachutes failed to deploy. PSMF ¶¶ 24–26; DSMF ¶ 9. There is no issue of fact regarding the actual role of the airplane in the accident. Concord's homeowners' insurance policy contains art exclusion for accidents involving airplanes:

> Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage:
>
> g. arising out of:
>
> (1) the ownership, maintenance, use, loading or unloading of an aircraft. . . .

Concord Homeowners' Policy, PSMF Ex. 22 at 11–12. Thus, as a matter of law, the Court concludes that Concord owes no duty of indemnification to Anderson in the Reeves suit under this insurance policy. This conclusion renders Virginia Surety, because of the breach of its duty to defend Anderson, liable for the entire settlement, as long as the settlement is reasonable and in good faith. The Court reaches this result without regard to whether Virginia Surety actually had a duty to indemnify Anderson based on the facts surrounding Reeves's death.

Virginia Surety's liability, however, is dependent upon the requirement that the settlement be both reasonable and in good faith. *Perry,* 692 A.2d at 1391. Plaintiffs contend that the settlement was reasonable. PSMF ¶ 48; Affidavit of Marie Marcotte ¶ 5. Virginia Surety does not dispute Plaintiffs' assertion of the reasonableness of the settlement. *See* Defendant's Counterstatement to PSMF at 3. Nor does Virginia Surety argue that the settlement was made in bad faith. The Court finds that the settlement was reasonable and in good faith, there being no dispute about the reasonableness of the settlement or Plaintiffs' good faith in entering into it. Thus, Virginia Surety is liable for the settlement entered into by its insured, Anderson, subsequent to its wrongful refusal to defend. The fact that Concord has paid the settlement costs does not change the analysis; Virginia Surety's breach of the duty to defend renders it responsible for the settlement costs of its insured in this instance.

### D. The Late Payment and Unfair Claims Practices Statutes

 Plaintiffs assert that Virginia Surety has violated both the Late Payment and the Unfair Claims Practices statutes. The Court will address the two statutes separately. The Late Payment statute provides

> A claim for payment of benefits under a policy of insurance against loss delivered or issued for delivery within this State is payable within 30 days after proof of loss is received by the insurer . . . , and a claim which is neither disputed nor paid within 30 days is overdue. . . .

24-A M.R.S.A. § 2436(1). Plaintiffs could not have provided Virginia Surety with the necessary proof of loss before the settlement of the Reeves suit in June 1997, because any loss would have been merely speculative prior to the resolution of the Reeves suit. The Late Payment statute further provides that "[a]n insurer may dispute a claim by furnishing to the insured, or his representative, a written statement that the claim is disputed with a statement of the grounds upon which it is disputed." 24-A M.R.S.A. § 2436(2). The Law Court has indicated that the statute does not require that the notice of dispute be in writing. *Depositors Trust Co. v. Farm Family Life Ins. Co.*, 445 A.2d 1014, 1018 (Me.1982). The Court is satisfied that Plaintiffs had notice of Virginia Surety's dispute of their claims through Virginia Surety's denial of its duty to indemnify Anderson in its pleadings in the instant action. *See* Answer to Amended Complaint (Docket No. 9) ¶ 9. Therefore, Virginia Surety has not violated the Late Payment statute, which provides penalties for the late payment of undisputed claims.

■ The Unfair Claims Practices statute permits insureds to bring civil actions against their insurers for certain conduct. This conduct includes "[f]ailing to acknowledge and review claims, which may include payment or denial of a claim, within a reasonable time following receipt of notice by the insurer of a claim by an insured arising under a policy." 24-A M.R.S.A. § 2436-A(1)(B). In the instant case, Virginia Surety waited approximately eleven months before indicating its refusal to defend or indemnify Anderson in the Reeves suit. Virginia Surety was notified of the Reeves suit in late April 1996 and did not respond to Anderson's requests for defense and indemnification until it denied such duties in its pleadings in March 1997. *See* Answer (Docket No. 1(2)) ¶ 13. Although the statute does not specifically provide that a violation occurs for an untimely response to a request for defense, the Court finds the language of the statute sufficiently broad to include a failure to respond in a timely manner to an insured's request for a defense. During the eleven-month period after Virginia Surety was notified of the Reeves suit, Anderson received two letters indicating that an investigation of the accident was being conducted. *See* PSMF Exs. 8 and 14. Under the comparison test, however, no investigation of the insured's claim is required to determine whether a duty to defend exists. The insurer need only consider the underlying complaint and the insurance contract in making its decision. *See Dolley*, 669 A.2d at 1322. Therefore, Virginia Surety's eleven-month delay in responding to Anderson's request for a defense was untimely and thus violated the Unfair Claims Practices statute.[14]

## III. ATTORNEYS' FEES

■ A court may award attorneys' fees for a declaratory judgment action brought, whether by the insurer or the insured, to establish the insurer's duty to defend when the insurer's duty to do so is clear under Maine law. *See Gibson*, 673 A.2d at 1354-55. However, the Law Court has held that the policies that warrant the award of attorneys' fees in such a declaratory judgment action do not apply when the action involves a dispute between two insurance companies. *See Peerless Ins. Co. v. Hannon*, 582 A.2d 253, 256 (Me.1990) ("Because this case involves a dispute over coverage between two insurance companies and not an insurance company forcing its insured to bear the litigation expense of a bad faith claim, the policy considerations that underlie the rule are not applicable here."). Accordingly, because all the parties agree that Concord is the real party-in-interest, the Court will not award attorneys' fees in this action.

## IV. CONCLUSION

Accordingly, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment be, and it is hereby, **DENIED.** It is further

14. The Court is aware that the Unfair Claims Practices statute authorizes "damages, together with costs and disbursements, reasonable attorney fees and interest on damages at the rate of 1 ½% per month." 24-A M.R.S.A. § 2436-A(1). However, as the Court has indicated, it is clear that Anderson has not borne the costs of this litigation or the Reeves settlement, and the Court thus declines to award damages or attorneys' fees under the Unfair Claims Practices statute.

**ORDERED** that Plaintiffs' Motion for Summary Judgment be, and it is hereby, **GRANTED.** Defendant is ordered to reimburse Concord for the entire costs of settlement and one-half of the defense costs and attorneys' fees associated with the Reeves suit from the date of notification. No attorneys' fees are awarded with regard to this action.